PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LARRY MILLER; 11TH SENATORIAL
DISTRICT REPUBLICAN COMMITTEE,
           *Plaintiffs-Appellants,*

v.

MICHAEL BROWN, in his official
capacity as Chairman of the
Virginia State Board of Elections;
BARBARA HILDENBRAND, in her
official capacity as Vice-Chairman
of the Virginia State Board of
Elections; JEAN R. JENSEN, in her
official capacity as Secretary of the
Virginia State Board of Elections,
           *Defendants-Appellees.*

No. 05-2254

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Henry E. Hudson, District Judge.
(CA-05-266-3)

Argued: May 23, 2006

Decided: August 30, 2006

Before WILKINS, Chief Judge, DUNCAN, Circuit Judge,
and Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Reversed and remanded by published opinion. Judge Goodwin wrote
the opinion, in which Chief Judge Wilkins and Judge Duncan joined.

**COUNSEL**

**ARGUED:** Kenneth Thomas Cuccinelli, II, CUCCINELLI & DAY, P.L.L.C., Fairfax, Virginia, for Appellants. James Christian Stuchell, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Paul A. Prados, CUCCINELLI & DAY, P.L.L.C., Fairfax, Virginia; Patrick M. McSweeney, MCSWEENEY & CRUMP, P.C., Richmond, Virginia, for Appellants. Robert F. McDonnell, Attorney General of Virginia, Francis S. Ferguson, Deputy Attorney General, Maureen Riley Matsen, Deputy Attorney General, Peter R. Messitt, Senior Assistant Attorney General, James W. Hopper, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

---

**OPINION**

GOODWIN, District Judge:

Virginia's 11th Senatorial District Republican Committee and its chairman, Larry Miller (collectively referred to as "the plaintiffs"), appeal the district court's order dismissing their constitutional challenge to Virginia's open primary law for lack of justiciability. We reverse. We remand to the district court for decision on the merits.

I.

On June 4, 2004, the Republican Party of Virginia amended its Plan of Organization to exclude voters who participated in the nomination process of another party within the preceding five years from voting in the Republican primary.[1] The Plan of Organization offers an exception for those who, in writing, renounce their affiliation with the other party, indicate their agreement with Republican Party principles, and express their intent to support the Republican Party's nominees. These amendments to the Plan of Organization became effective on June 15, 2006.

---

[1] This provision does not apply to voters who participated in another party's nomination process before March 1, 2004.

The plaintiffs conduct nominations for the Republican candidate running for the 11th District's seat in the Senate of Virginia. Stephen Martin, a Republican, currently holds the seat and is up for reelection in 2007. In Virginia, incumbents may select their method of nomination. Va. Code Ann. § 24.2-509(B) (2006). On August 12, 2004, Senator Martin submitted a form to the plaintiffs that designated a primary as his chosen method of nomination for the 2007 election.

On January 13, 2005, the plaintiffs decided to hold the 2007 primary consistent with the recent amendments to the state party's Plan of Organization. That is, they would exclude anyone who voted in any Democratic primary in Virginia since March 1, 2004, from participating in their primary. Mr. Miller informed the Virginia State Board of Elections ("Board") of the plaintiffs' decision in a January 17, 2005 letter. The letter requests "written confirmation from [the Board] of [its] receipt of this letter and of [the Board's] intention to implement the above-noted restrictions on the participation by Democrats in our primary." J.A. 34.

Jean Jenson, the Board's secretary, replied on behalf of the Board on February 9, 2005. She explained the plaintiffs may take whatever action they deem appropriate that complies with their party's Plan of Organization, but pointed out several Virginia statutes for Mr. Miller's review. She noted that under Section 24.2-516, "the State Board of Elections may accept notification of the selection of the primary method of nomination for the 2007 election in 11th Senate District *no earlier than February 22, 2007, and no later than March 14, 2007*." J.A. 36 (emphasis in original). Section 24.2-516 provides:

> At least 120 days prior to the regular date for a primary, the Board shall inquire of each state chairman and each county and city chairman whether a direct primary has been adopted. The Board shall advise each chairman that notification to the Board of the adoption of a direct primary is required and must be filed with the Board not more than 110 days and not less than 90 days before the date set for the primaries.
>
> Each chairman shall file timely written notice with the Board whether or not a primary has been adopted and iden-

tify each office for which a primary has been adopted. The requirement to notify the Board of the adoption of a direct primary shall be satisfied when the Board receives by the deadline (i) written notice from the appropriate party chairman or (ii) a copy of the written notice from an incumbent officeholder to his party chairman of the incumbent's selection, pursuant to § 24.2-509, of the primary as the method of nomination.

*Id.* § 24.2-516.

At the conclusion of the letter, Ms. Jensen stated the Board must follow Section 24.2-530, Virginia's open primary law. This law provides:

All persons qualified to vote, pursuant to §§ 24.2-400 through 24.2-403, may vote at the primary. No person shall vote for the candidates of more than one party.

Va. Code Ann. § 24.2-530. After quoting the statute, she explained that unless Mr. Miller can "point to a specific provision" of Virginia law authorizing the Board to restrict voting in the pending primary, the Board "will have to comply with the law of the Commonwealth in effect at that time." J.A. 37.

On April 12, 2005, the plaintiffs filed a declaratory judgment action under 42 U.S.C. § 1983 seeking a declaration that Virginia's open primary law violates their constitutional rights to free association. The Board filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on June 14, 2005. The plaintiffs filed a summary judgment motion two months later. Following a hearing, the district court granted the defendant's motion to dismiss for lack of subject matter jurisdiction. The district court ruled the plaintiffs lacked standing and that the case was not ripe.

II.

It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court.

*Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Article III gives federal courts jurisdiction only over "cases and controversies," U.S. Const. art. III, § 2, cl. 1, and the doctrine of standing identifies disputes appropriate for judicial resolution. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471-76 (1982). A claim is justiciable if the "conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)).

We review a district court's dismissal for lack of standing and ripeness de novo. *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 385-86 (4th Cir. 2001).

### A.

The doctrine of standing is an integral component of the case or controversy requirement. *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997). There are three components of constitutional standing: (1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The party attempting to invoke federal jurisdiction bears the burden of establishing standing. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). The plaintiffs argue the district court erred when it concluded they lack standing. We agree.

The first component of standing requires the plaintiffs to allege an actual or threatened injury. *Valley Forge Christian Coll.*, 454 U.S. at 472. The plaintiffs' Complaint alleges:

> By maintaining, implementing and/or enforcing a set of laws forbidding plaintiffs the right to exclude Democrat Party primary voters from their Republican Party nomination in accordance with their own adopted rules contained in the Party Plan, defendants are propogating [sic] customs,

policies, and practices that violate the plaintiffs' rights of
free association under the First Amendment of the United
States Constitution.

J.A. 5. The allegation of having to associate with members of the
other party during their candidate-selection processes unquestionably
pleads a constitutional injury. *See Cal. Democratic Party v. Jones*,
530 U.S. 567, 577-82 (2000) (finding blanket primary unconstitu-
tional because it "forces petitioners to adulterate their candidate-
selection process . . . by opening it up to persons wholly unaffiliated
with the party"). Whether this alleged injury is actual or threatened,
however, requires closer examination.

The district court held the asserted injuries were not actual or
imminent. J.A. 109. The district judge explained that Senator Martin
is not an official candidate for the 2007 primary until he files a writ-
ten declaration of candidacy, which cannot occur until at least March
27, 2007. *See* Va. Code Ann. § 24.2-520 (stating a candidate for a
party's nomination in a primary must file a written declaration of can-
didacy with the Board); *id.* § 24.2-522 (explaining the declaration of
candidacy should be filed with the Board between noon on the 77th
day and 5:00 p.m. on the 60th day preceding the primary). The district
judge also cited Section 24.2-526, which requires at least two persons
to file declarations of candidacy to hold a primary.[2] J.A. 110.

In the standing analysis, we avoid focusing on the injuries of Sena-
tor Martin, who is not a party, and concentrate on the injuries of the

---

[2]This statute provides:

> Whenever within the time prescribed by this article there is only
> one declaration of candidacy in a political party for the nomina-
> tion for any office, the person filing the declaration shall be
> declared the nominee of the party for the office for which he has
> announced his candidacy and his name shall not be printed on
> the ballot for the primary. Whenever within the time prescribed
> by this article there is no declaration of candidacy in a political
> party for the nomination for any office, the appropriate commit-
> tee of the party may provide for an alternative method of nomi-
> nating a candidate.

Va. Code Ann. § 24.2-526.

plaintiffs. Focusing on the plaintiffs' injuries reveals that their alleged constitutional injuries are not conjectural or hypothetical. The participation of Democrats in the plaintiffs' upcoming primary is inevitable.[3] Knowing their upcoming process for selecting a nominee will include Democrats prevents the plaintiffs from formulating a message and selecting the candidates best tailored to their party's interests. *See Clingman v. Beaver*, 544 U.S. 581, 600 (2005) (O'Connor, J., concurring) ("And the choice of who will participate in selecting a party's candidate obviously plays a critical role in determining both the party's message and its prospects of success in the electoral contest.").

The plaintiffs' goal to nominate the candidate who best represents the interests of the Republican Party in the 11th Senatorial District is thwarted if the plaintiffs must account for Democrats voting in their primary. *See Jones*, 530 U.S. at 577-82 (recognizing the effects of crossover voting on a political party's right to freely associate). Knowing that voters wholly unaffiliated with the plaintiffs' party will participate in their primary dramatically changes the plaintiffs' decisions about campaign financing, messages to stress, and candidates to recruit. Because campaign planning decisions have to be made months, or even years, in advance of the election to be effective, the plaintiffs' alleged injuries are actual and threatened. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500-01 (10th Cir. 1995) (finding injury from the mere existence of a New Mexico statute relating to campaign expenditures that caused congressman to engage in fundraising differently than he otherwise would have, even though the congressman had not yet announced his intention to run for office).

The mere existence of the open primary law causes these decisions to be made differently than they would absent the law, thus meeting

---

[3]The open primary law inevitably causes crossover voting and also allows for the strong possibility for organized party raiding. *See Clingman v. Beaver*, 544 U.S. 581, 596 (2005) (explaining the effects of party raiding). The Supreme Court defines "party raiding" as "the organized switching of blocs of voters from one party to another in order to manipulate the outcome of the other party's primary election." *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 n.9 (1983).

the standing inquiry's second requirement of a causal connection between the plaintiffs' injuries and the law they challenge. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). The open primary law causes the plaintiffs to associate with Democrats during the candidate-selection process. Under Virginia law, Democrats cross over and vote in the Republican primary free of procedural impediments, such as changing voter registration or paying a fee. Accounting for Democrats in the primary causes the plaintiffs to alter campaign decisions. *See Jones*, 530 U.S. at 581-82 ("Such forced association has the likely outcome . . . of changing the parties' message.). "We can think of no heavier burden on a political party's associational freedom." *Id.* at 582. Undoubtedly, a causal connection exists between the open primary law itself and the plaintiffs' alleged injuries.

This case is different from our decision in *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997), which also presented a challenge to Virginia's open primary law. The *Marshall* plaintiffs lacked standing because the party's decision to hold an open primary, not the open primary law itself, caused their alleged injuries.[4] *Marshall*, 105 F.3d at 906. In this case, however, the plaintiffs want a closed primary, not the open primary Virginia requires. Finding a causal connection between the open primary law and the plaintiffs' alleged injuries, the plaintiffs satisfy the second component of standing.

The third component of standing requires the plaintiffs to show that their injuries can be redressed by a favorable court decision. *Lujan*, 504 U.S. at 560. A favorable court decision in this case would allow the plaintiffs to exclude Democrats from participating in their primary and thus eliminate their alleged injuries. In *Marshall*, because the party chose to have an open primary, we could not have redressed the plaintiffs' alleged injuries. *Marshall*, 105 F.3d at 906. We explained, "If the Virginia Republican Party voluntarily elects an 'open' primary, which it is legally entitled to do, then there is nothing this court can do to prevent the Virginia Republican Party from 'forcing' its

---

[4]In *Marshall*, we declined to address the first component of standing—whether the open primary law causes actual or threatened injury to a political party—because it was apparent the plaintiffs could not establish the second or third components. *Marshall*, 105 F.3d at 906 n.5.

members to vote with non-Republicans." *Id.* In this case, the plaintiffs' alleged injuries are redressable and thus satisfy the third component of standing.

The plaintiffs' alleged injuries (1) are actual and threatened, (2) are fairly traceable to the statute they challenge, and (3) are redressable by the court. Accordingly, the plaintiffs have standing.

B.

The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in "clean-cut and concrete form." *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947). The burden of proving ripeness falls on the party bringing suit. *Renne v. Geary*, 501 U.S. 312, 316 (1991). Analyzing ripeness is similar to determining whether a party has standing. See Erwin Chemerinsky, *Federal Jurisdiction* § 2.4 (4th ed. 2003) ("Although the phrasing makes the questions of who may sue and when they sue seem distinct, in practice there is an obvious overlap between the doctrines of standing and ripeness.").

To determine whether the case is ripe, we "balance 'the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration.'" *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998)). A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties. *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992). "The hardship prong is measured by the immediacy of the threat and the burden imposed on the [plaintiffs] who would be compelled to act under threat of enforcement of the challenged law." *Id.* at 208-09. When considering hardship, we may consider the cost to the parties of delaying judicial review. *Fort Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119, 1124 (4th Cir. 1977).

This case is fit for judicial review. The only issue in the case is whether Virginia's open primary law violates the plaintiffs' First Amendment rights to freely associate, which presents a purely legal question. Rejecting the Board's arguments that too many uncertainties

exist to decide this case now, we find the only true uncertainty is whether another candidate will file for office as contemplated by Section 24.2-526.[5] Although an uncertainty, this procedural step cannot occur until at least March 27, 2007, and as late as seventeen days later. The primary election likely would be resolved before an action brought that late could reach final decision. The case is fit for judicial review despite this uncertainty.

In *Babbitt v. United Farm Workers National Union*, the Supreme Court deemed ripe a First Amendment challenge to procedures governing the election of employee-bargaining representatives in Arizona's farm labor statute. The Court found the plaintiffs' challenge ripe even though they had not actually invoked the statute's election procedures. *Babbitt*, 442 U.S. at 299. The plaintiffs' challenge, based on the procedures' effect of frustrating rather than facilitating democratic selection, was justiciable because "of the nature of their claim." *Id.* at 299-300. Like the plaintiffs in our case, the Babbitt plaintiffs claimed the challenged statute imposed a continuing injury on their associational rights.[6] *Id.* at 300. Although *Babbitt* dealt with internal labor elections, the Court analogized the challenge in that case to chal-

---

[5]In addition to the requirement for two candidates to file, the Board relies on Section 24.2-516, which requires notification to the Board of a local district's selection of a method for nomination. This section specifies notification must occur between February 22 and March 14, 2007. Va. Code Ann. § 24.2-516. The statute, however, does not require the plaintiffs to select their method of nomination during this time period; it merely requires the Board "to inquire" about the method already chosen. *Id.* The statute explains the Board must inquire to determine whether a primary "has been adopted" by the local district. The verb choice indicates the local district selects its method for nomination at some time prior to the time period for the Board's inquiry. *Id.*

[6]Under the Board's ripeness argument, the case cannot become ripe until at least two candidates file for office. The reasoning supporting this argument, however, suggests the Board believes the case is not actually ripe until the first Democrat casts a vote in the Republican primary. The Court explains the problems with this argument in *Babbitt*:

> Though waiting until [the plaintiffs] invoke unsuccessfully the statutory election procedures would remove any doubt about the existence of concrete injury resulting from application of the election provision, little could be done to remedy the injury incurred in the particular election.

*Babbitt*, 442 U.S. at 301 n.12. Similarly, if we waited until after the election to decide this case, redressing the plaintiffs' injuries would be impossible.

lenges brought on the eve of pending governmental elections. *Id.* The Court's reasoning is helpful to our ripeness inquiry:

> Challengers to election procedures often have been left without a remedy in regard to the most immediate election because the election is too far underway or actually consummated prior to judgment. Justiciability in such cases depends not so much on the fact of past injury but on the prospect of its occurrence in an impending or future election. There is value in adjudicating election challenges notwithstanding the lapse of a particular election because "[the] construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held."

*Id.* at 301 n.12 (emphasis in original) (citations omitted).

Bringing lawsuits on the eve of pending elections disrupts the electoral process. Not only would a last-minute decision declaring Virginia's open primary law unconstitutional affect the parties in the case, but it would significantly affect non-parties as well. For example, the votes of absentee voters who had mailed in their ballots could not properly be considered. *See Williams v. Rhodes*, 393 U.S. 23, 35 (1968) (finding last-minute addition to ballot would pose "a risk of interference with the rights of other [ ] citizens, for example, absentee voters"). If we adopt the Board's position that the courts should not decide the case until another candidate files for office, courts would have to decide the case between the last day for a candidate to file (60 days before the election) and the day absentee ballots are distributed (approximately 30 days before the election). Providing only thirty days for briefing, argument, and decision of a novel constitutional question before the courts is troublesome.

In *Simkins v. Gressette*, 631 F.2d 287 (4th Cir. 1980), we dismissed a challenge alleging South Carolina's reapportionment plan unconstitutionally diluted the plaintiffs' votes. The *Simkins* plaintiffs brought their claim just two days before the beginning of the filing period and sixteen days before the filing deadline. *Simkins*, 631 F.2d at 295. We

explained, "Although the court below expedited this matter as best possible, the hearing did not occur until the filing deadline had passed and only 5 1/2 weeks remained before the primary elections themselves." *Id.* at 295-96. Finding the plaintiffs could have brought suit as early as three years earlier, we stated the plaintiffs should have brought suit earlier to avoid a "major disruption" in the pending election. *Id.* at 296. In deciding *Simkins*, we relied on our reasoning from *Maryland Citizens for a Representative General Assembly v. Governor of Maryland*, 429 F.2d 606 (4th Cir. 1970), where we upheld a district court's refusal to convene a three-judge district court to decide a suit filed thirteen weeks prior to the filing deadline that challenged an apportionment plan. *Maryland Citizens*, 429 F.2d at 607. "The maintenance of such a suit at that time, [we] concluded, would have resulted in great disruption in the election process." *Simkins*, 631 F.2d at 295 (explaining *Maryland Citizens*).

Waiting until at least two candidates file for office likely would provide insufficient time to decide the case without disrupting the pending election. That delay would force the plaintiffs to bring suit closer to the date of the primary than either the plaintiffs in *Simkins* or the plaintiffs in *Maryland Citizens*. Moreover, striking down Virginia's open primary law on the eve of the election would seriously disrupt the election process.

The district court also based its ripeness decision on the fact "[t]he Board has made no formal decisions concerning the 2007 election." J.A. 111. The Board is charged with carrying out Virginia's election laws. *See* Va. Code Ann. § 24.2-103 (detailing the Board's duties). At no point has the Board, or any other State actor, suggested that the open primary law will not be enforced. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (finding standing to seek pre-enforcement review of statute where no evidence that law would not be enforced). The Board's February 9, 2005 letter and the Assistant Attorney General's concession at oral argument are further evidence the law will be enforced.

Turning to the hardship prong, the plaintiffs would suffer undue hardship by waiting until the eve of the election to seek a decision in their case. The open primary law causes immediate harm to their constitutionally protected rights because they know Democrats will be

participating in their primary; if, however, the plaintiffs' challenge is successful, these Democrats will be precluded from participating. By obtaining a final decision now, the plaintiffs will have adequate time to make effective campaign decisions. Waiting until the last minute to seek a final ruling will severely diminish the effectiveness of these decisions. The plaintiffs' injuries become worse each day decision is delayed. *See Reg'l Rail Reorganization Cases*, 419 U.S. 102, 123-24 (1974) (finding plaintiffs' injuries accelerated by delaying decision on the applicability of the Tucker Act).

This case is fit for judicial review. Accordingly, we find the case ripe for decision.

## III.

The district court erred in concluding the plaintiffs lack standing and the case is not ripe. The case is remanded for consideration of the merits.

*REVERSED AND REMANDED*