WILLIAMS, Chief Judge,
concurring in part and dissenting in part and concurring in the judgment:
I join in full in Parts I, III.B, and IV of the majority opinion and, accordingly, I concur in the result reached in Part V, affirming the dismissal of the complaint by Long Term Care Partners, LLC (“LTC Partners”). I write separately, however, because I believe that, in light of Arbaugh v. Y&H Corp., 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), “final agency action” under § 704 of the Administrative Procedure Act (“APA”) is not a prerequisite for us to exercise subject matter jurisdiction. Accordingly, I do not believe we may proceed to consider whether LTC Partners has met its burden under Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), without first considering whether LTC Partners possesses standing to bring this action.
Instead, I would first consider that question and answer it in the affirmative. Furthermore, I believe that LTC Partners has met its burden of proving that the Equal Employment Opportunity Commission (“EEOC”) is violating a clear statutory mandate, in satisfaction of Leedom’s first prong. I concur in the judgment of the court, however, because I agree with the conclusion, reached in Part III.B, that LTC Partners cannot show our failure to act in this case “would wholly deprive” it “of a meaningful and adequate means of vindicating its statutory rights.” Bd. of Governors, Fed. Reserve Sys. v. MCorp. Fin., Inc., 502 U.S. 32, 43, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991).
I.
A.
In Flue-Cured Tobacco Coop. Stabilization Corp. v. E.P.A., 313 F.3d 852 (4th Cir.2002), we held that, absent final agency action under § 704, we lacked subject matter jurisdiction over challenges to an agency’s decision making. Id. at 857. Importantly, we also answered that question before addressing what we perceived to be a thorny standing question in that case. Id. Following this approach, the majority declines to answer whether LTC Partners has standing and instead rests its decision on the ground that the EEOC’s actions do not represent “final agency action,” and that LTC Partners failed to prove its entitlement to the Leedom exception to the APA’s finality requirement.
Flue-Cured Tobacco entered us into a circuit-split at the time it was decided, see Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm’n, 324 F.3d 726, 731 (D.C.Cir.2003) (holding that where “judicial review is sought under the APA *239 rather than a particular statute prescribing judicial review, the requirement of final agency action is not jurisdictional”); R.I. Dep’t of Envtl. Mgmt. v. United States, 304 F.3d 31, 40 (1st Cir.2002) (“[T]he issue of whether the APA provides for judicial review of the nonfinal ruling is not one that, precisely speaking, implicates the subject-matter jurisdiction of the court.”), and, in light of recent Supreme Court precedent, our side of that circuit-split is no longer defensible. In Arbaugh, the Court created a bright-line rule for analyzing whether a statutory provision implicates our subject matter jurisdiction:
If the Legislature clearly states that a threshold limitation on a statute’s scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue .... But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.
Arbaugh, 546 U.S. at 515-16, 126 S.Ct. 1235 (internal citation omitted).
The Court then applied its “readily ad-ministrable bright line” to find that the numerosity requirements in Title VII were not jurisdictional but “an element of a plaintiffs claim for relief.” Id. at 516, 126 S.Ct. 1235.
In the wake of Arbaugh, at least two circuits have considered whether § 704 of the APA implicates the subject matter jurisdiction of the federal courts and both concluded, with little hesitation, that § 704 falls on the non-jurisdictional side of Arbaugh’s bright-line rule. See Trudeau v. Fed. Trade Comm’n, 456 F.3d 178, 183-84 & nn. 6-7 (D.C.Cir.2006) (same); see also Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 33 (1st Cir.2007) (reaffirming the court’s pre-Arbaugh determination that the APA’s finality requirement is not jurisdictional). It might be possible to argue that, because Arbaugh did not specifically address § 704 of the APA, the Court did not overrule Flue-Cured Tobacco. As the Sixth Circuit has explained, however, Arbaugh “effectively overruled” cases, like Flue-Cured Tobacco, that failed to apply a bright-line clear statement rule for jurisdiction. Thomas v. Miller, 489 F.3d 293, 298 (6th Cir.2007).
Accordingly, because § 704 of the APA does not contain a clear statement implicating our subject matter jurisdiction, the “final agency action” requirement contained therein, like the numerosity requirement in Title VII, is “nonjurisdictional in character.” Arbaugh, 546 U.S. at 516, 126 S.Ct. 1235.
B.
Having concluded that § 704’s “final agency action” requirement does not impact our subject matter jurisdiction, we must next decide whether this conclusion nonetheless permits us to consider the presence of final agency action before considering LTC Partners’ standing. The question of LTC Partners’ standing does impact our subject matter jurisdiction, for standing is “an integral component of the case or controversy requirement.” Miller v. Brown, 462 F.3d 312, 316 (4th Cir.2006).
The majority, relying on the Supreme Court’s even more recent decision in Sinochem Int’l Co. v. Malaysia Int’l Shipping Corp., — U.S. -, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007), concludes that the standing inquiry need not precede consideration of the APA’s finality requirement. In Sinochem, the Court held that a federal court may properly address forum non conveniens before jurisdictional inquiries when those inquiries are difficult and “forum non conveniens considerations weigh heavily in favor of dismissal.” Id. at *240 1194. Such a holding was permissible only because the Court first found that “[a] forum non conveniens dismissal ‘den[ies] audience to a case on the merits’ ” and “is a determination that the merits should be adjudicated elsewhere.” Id. at 1192 (emphasis added) (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)). Because, however, “final agency action” under § 704 of the APA should not be considered jurisdictional after Arbaugk, I believe it is better categorized as “an element of a plaintiffs claim for relief,” Arbaugh, 546 U.S. at 516, 126 S.Ct. 1235, and, as such, a merits-based ground for dismissal.*
By advancing to the inquiry into final agency action under the APA in this ease without first addressing LTC Partners’ standing, the majority violates the principle announced in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Steel Co. clarified that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject matter jurisdiction) and the parties (personal jurisdiction). See id., at 93-102, 118 S.Ct. 1003. “ ‘Without jurisdiction the court cannot proceed at all in any cause,’ ” id. at 94, 118 S.Ct. 1003 (quoting Ex parte McCardle, 7 Wall. 506, 514, 19 L.Ed. 264 (1869)), and it may not assume jurisdiction for the purpose of deciding the merits of the case,” id. at 94, 118 S.Ct. 1003. Because standing does implicate our subject matter jurisdiction, advancing to the non-jurisdictional ground of § 704 of the APA prior to deciding the question of LTC Partners’ standing represents the very “hypothetical jurisdiction” Steel Co. condemns and, accordingly, I must dissent from Part II of the majority opinion.
II.
A.
Although the district court declined to address LTC Partners’ standing below, the United States renews this argument on appeal and, because “[i]t is well settled that under Article III of the United States Constitution, a plaintiff must establish that a ‘case or controversy’ exists,” Smith v. Frye, 488 F.3d 263, 272 (4th Cir.2007), and “[t]he doctrine of standing is an integral component of the case or controversy requirement,” Miller v. Brown, 462 F.3d at 316, we have a duty to probe LTC Partners’ standing to appear before the court. Indeed, LTC Partners “cannot rest [its] claim to relief on the legal rights or interests of third parties.” Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).
Standing has three components:
First, the plaintiff must have suffered an “injury in fact” — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) “actual or imminent, not ‘conjectural’ or ‘hypothetical.’ ” Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be “fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.” Third, it must be “likely,” as opposed to merely “speculative,” that the injury will be “redressed by a favorable decision.”
*241 Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotation marks omitted).
LTC Partners, as the party asserting federal jurisdiction, has the burden of establishing these requirements. Id. at 561, 112 S.Ct. 2130.
Some cases, such as this one, illustrate that the distinction between the inquiry into a litigant’s Article III standing to bring a claim and the inquiry into the ultimate merits of the plaintiffs claim is often a fine one. See, e.g., Town of Norwood v. F.E.R.C., 202 F.3d 392, 406 (1st Cir.2000) (noting that, on the facts presented, “the issue of standing and ‘the merits’ substantially overlapped]”); William A. Fletcher, “The Structure of Standing,” 98 Yale L.J. 221, 237 (1988) (arguing that “standing determinations are actually determinations on the merits”). In such cases, the inquiry into whether a litigant has alleged some injury in fact that is fairly traceable to the defendant and likely to be redressed by a favorable decision is so close to the merits that it is tempting to put aside the differences between the two inquiries and jump straight to addressing the merits of the litigant’s claim. That the distinction between standing and the merits is sometimes shadowy does not mean that the distinction is artificial, however, for, as the Supreme Court has noted, even if standing “often turns on the nature and source of the claim asserted,” it “in no way depends on the merits of the plaintiffs contention that particular conduct is illegal.” Warth, 422 U.S. at 500, 95 S.Ct. 2197.
Moreover, the Court has cautioned that inquiry into the merits cannot precede inquiry into the Article III standing question without running the risk of rendering the merits inquiry nothing more than an advisory opinion; this illustrates the chronological differences between the two inquiries. Steel Co., 523 U.S. at 94, 118 S.Ct. 1003. At its core, “the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues,” Warth, 422 U.S. at 498, 95 S.Ct. 2197, which is always a distinct inquiry from the question of how a litigant’s claim should be decided. Inasmuch as federal courts cannot hear cases that do not comport with Article III of the Constitution, they also cannot deny a litigant who meets Article Ill’s standing requirements access to a federal forum simply because it appears that he or she cannot win in the end. Article III limits federal court jurisdiction to “cases or controversies,” U.S. Const. art. III, § 2, not “cases or controversies that will be decided in the plaintiffs favor,” and whether a litigant has a sufficient personal stake in a suit is a different question than whether that litigant has stated a cause of action.
B.
The current case remains at the pleading stage, with the district court having granted the United States’ motion to dismiss. The stage of litigation is significant because, given that the elements of standing “are not mere pleading requirements but rather an indispensable part of the plaintiffs case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.” Lujan, 504 U.S. at 561, 112 S.Ct. 2130. Of course, at the pleading stage, “general factual allegations of injury resulting from the defendant’s conduct may suffice,” because courts “presume that general allegations embrace those specific facts that are necessary to support the claim.” Id. (internal quotation marks and alteration omitted). By con *242 trast, if the case had advanced to the summary judgment stage, such “allegations” would no longer suffice and LTC Partners would be required, under Federal Rule of Civil Procedure 56(e), to “set out” by affidavit or other evidence “specific facts” to support its standing to pursue this action.
Pursuant to this framework, I would conclude that LTC Partners possesses standing to pursue this action. In its original complaint, LTC Partners alleged that it is being injured by the EEOC’s exercise of jurisdiction over its “insurability decisions” and that this exercise is “outside [the EEOC’s] authority, arbitrary, capricious, ... and otherwise not in accordance with law.” (J.A. at 91.) Such an allegation, at this stage of the litigation, is sufficient to show injury in fact. The Court has found that, “[w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be [alleged] ... in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue.” Lujan, 504 U.S. at 561, 112 S.Ct. 2130. If, like here, the pleading contains an allegation that the plaintiff is the object of the action, “there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.” Id. at 561-62, 112 S.Ct. 2130.
Moreover, under Warth, an injury in fact can “exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.” 422 U.S. at 500, 95 S.Ct. 2197. In a similar vein, we have recognized that a party can sue for violation of “a ‘procedural right,’ e.g., the right to have the Executive observe procedures mandated by law.” Hodges v. Abraham, 300 F.3d 432, 444 (4th Cir.2002). The existence of Leedom itself, permitting “federal district courts [to exercise] subject matter jurisdiction to invalidate [agency] actions that clearly fall outside the [agency’s] jurisdiction,” counsel in favor of finding that LTC is suffering a cognizable injury. S.C. State Ports Auth. v. N.L.R.B., 914 F.2d 49, 51 (4th Cir.1990). Finally, the standard to show an injury in fact is admittedly low at this stage of litigation; “the claimed injury need not be large, an identifiable trifle will suffice.” Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 156 (4th Cir.2000) (en banc) (internal quotation marks omitted).
The causation and redressability requirements for standing are also met here. Neither party disputes that the EEOC is causing this alleged injury. And LTC Partners’ requested relief is likely to redress the alleged injury; LTC Partners requested a declaration that the EEOC’s “assertion of jurisdiction to review insura-bility decisions ... is void” and a declaration that “the EEOC is without jurisdiction to review insurability decisions made pursuant to the [Federal Long Term Care Insurance Program].” (J.A. at 94.) The majority suggests that this requested relief may not redress LTC Partners’ injury because the EEOC claims (and the majority agrees) that the EEOC is actually not reviewing individual insurability determinations, but only the Master Contract entered by the Office of Personal Management (“OPM”). This suggestion, however, overlooks the fact that LTC Partners’ standing “in no way depends on the merits of the plaintiffs contention that particular conduct is illegal.” Warth, 422 U.S. at 500, 95 S.Ct. 2197. LTC Partners’ complaint alleges that the EEOC, by exercising jurisdiction over the claims filed by Ralph D. Rouse, Jr. and others, is in fact reviewing its insurability decisions; the majority’s conclusion that such an exercise of jurisdiction does not actually affect LTC *243 Partners’ individual insurability decisions is a conclusion that LTC Partners has failed to state a claim, not that it lacks standing to bring such a claim.
In sum, given that this case remains at the pleading stage, I would find that LTC Partners has met its burden of providing that it has standing to pursue its claim that the EEOC is exercising jurisdiction over its insurability decisions in a manner contrary to law.
III.
Having concluded that LTC Partners has standing to maintain this action, I next turn to the question of final agency action and the Leedom exception. On this issue, I disagree with the majority that LTC Partners has failed in its burden to prove it can satisfy Leedom's first prong. Instead, because the plain language of the Long Term Care Security Act, (“LTCSA”), 5 U.S.C.A. §§ 9001-9009 (West 2007), provides that a “carrier’s determination as to whether or not a particular individual is eligible to obtain long-term care insurance coverage under this chapter shall be subject to review only to the extent and in the manner provided in the applicable master contract,” 5 U.S.C.A. § 9003(c)(2), and the master contract between LTC Partners and OPM does not provide for review by the EEOC, I would find that the EEOC is violating a clear statutory mandate. I agree in full, however, with the majority’s conclusion, in Part III.B, that LTC Partners cannot satisfy Leedom’s second prong, because LTC Partners cannot show our failure to act “would wholly deprive” it “of a meaningful and adequate means of vindicating its statutory rights.” MCorp. Fin., 502 U.S. at 43, 112 S.Ct. 459. In addition, I agree with the conclusion in Part IV that LTC Partners has waived any argument regarding “final agency action,” and that, even if a finding of waiver were inappropriate, no final agency action occurred. This agreement permits me to concur in the result reached in Part V, dismissing LTC Partners’ complaint.

 And, as part of the claim for relief, failure to prove or plead final agency action would result in failure to file a claim upon which relief may be granted. See Federal Rule of Civil Procedure 12(b)(6). Dismissal based upon that ground must be considered dismissal on the merits for purposes of res judicata. See Federal Rule of Civil Procedure 41(b).