**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-2057**

SOUTH CAROLINA CITIZENS FOR LIFE, INCORPORATED,

Plaintiff - Appellant,

v.

KENNETH C. KRAWCHECK; MARVIN D. INFINGER; EDWARD E. DURYEA;
JOHNNIE M. WALTERS; ROBERT A. BRUCE; PRISCILLA L. TANNER;
SUSAN P. MCWILLIAMS, in their official capacities as
commissioners of the South Carolina State Ethics Commission,

Defendants – Appellees,

and

HENRY MCMASTER, in his official capacity as the South
Carolina Attorney General,

Defendant.

Appeal from the United States District Court for the District of
South Carolina, at Florence.  Terry L. Wooten, District Judge.
(4:06-cv-02773-TLW)

Argued:  September 24, 2008        Decided:  November 20, 2008

Before WILLIAMS, Chief Judge, AGEE, Circuit Judge, and T. S.
ELLIS, III, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

Reversed and remanded by unpublished opinion.  Senior Judge
Ellis wrote the opinion, in which Chief Judge Williams and Judge
Agee joined.

**ARGUED:** James Bopp, Jr., BOPP, COLESON & BOSTROM, Terre Haute, Indiana, for Appellant.  Christian Stegmaier, COLLINS & LACY, Columbia, South Carolina, for Appellees.  **ON BRIEF:** Jeffrey P. Gallant, BOPP, COLESON & BOSTROM, Terre Haute, Indiana, for Appellant.  Joel W. Collins, Jr., Robert F. Goings, COLLINS & LACY, Columbia, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

ELLIS, Senior District Judge:

This is an appeal from a dismissal on ripeness grounds of an action challenging the constitutionality of two provisions of South Carolina election law. For the reasons that follow, we reverse and remand to the district court for decision on the merits.

I.

South Carolina Citizens for Life, Inc. ("SCCL") is a nonprofit corporation established to present information to the public on abortion, euthanasia, and related issues and to advocate a pro-life position on these issues. One of the ways SCCL advances its pro-life mission is to inform the public about the positions of candidates for public office on abortion-related issues by distributing voter guides. SCCL planned to distribute voter guides by direct mail regarding the candidates for the House District 79 seat prior to South Carolina's 2006 general election, held on November 7, 2006. The group expected to spend approximately $15,000 on the voter guides.

SCCL became concerned that this mass mailing might implicate South Carolina election law. Specifically, SCCL worried that it might be considered a "committee" under South

Carolina law if it distributed the voter guides as planned.[1]  If SCCL were a committee, it would be required to register as such, maintain records of its expenditures, and regularly file certified campaign reports.  S.C. Code Ann. §§ 8-13-1302, -1304, -1308.  If SCCL failed to comply with these requirements, it would risk criminal and civil penalties.  Id. §§ 8-13-1510, -1520.

On September 22, 2006, SCCL sent a letter and a sample voter guide to the South Carolina State Ethics Commission

---

[1] As amended in 2003, the Ethics, Government Accountability, and Campaign Reform Act of 1991 ("Ethics Act") defines a "committee" as including

> an association, a club, an organization, or a group of persons which, to influence the outcome of an elective office, receives contributions or makes expenditures in excess of five hundred dollars in the aggregate during an election cycle.

S.C. Code Ann. § 8-13-1300(6) (2007).  The statute in turn defines the phrase "[i]nfluence the outcome of an elective office" as including

> any communication made, not more than forty-five days before an election, which promotes or supports a candidate or attacks or opposes a candidate, regardless of whether the communication expressly advocates a vote for or against a candidate.

Id. § 8-13-1300(31)(c).  The term "communication" includes "any paid message conveyed through . . . direct mail."  Id. § 8-13-1300(31)(c)(ii).  Therefore, given that SCCL anticipated distributing its voter guides within forty-five days of the election at a cost of more than five hundred dollars, SCCL would fall within the statute's definition of a "committee" if the voter guides were deemed to "promote[] or support[] a candidate or attack[] or oppose[] a candidate."

4

("Commission") requesting by October 1, 2006, both an informal and a formal advisory opinion regarding whether the guide represented a communication made to "[i]nfluence the outcome of an elective office" under § 8-13-1300(31)(c) and whether the planned distribution would make SCCL a "committee" under § 8-13-1300(6). As the state agency responsible for the enforcement of the Ethics Act, the Commission investigates alleged violations of the statute, and after an administrative hearing may either impose a civil penalty or refer the matter to the State Attorney General for appropriate action. Id. § 8-13-320. The state legislature has authorized the Commission to issue and publish advisory opinions.[2] Id. § 8-13-320(11).

On September 29, 2006, the Executive Director of the Commission responded to SCCL's request. Explaining that the Commission had not previously addressed the issues raised and citing ongoing litigation regarding the constitutionality of S.C. Code Ann. § 8-13-1300(31)(c),[3] the Executive Director

---

[2] The Commission has promulgated regulations on advisory opinions that distinguish between informal and formal opinions. S.C. Code Regs. 52-301 to -303 (2007). The regulations specify that "[u]pon receipt of a request for opinion, the Commission will provide an informal advisory opinion, if appropriate." Id. at 52-302. The full Commission considers the request for a formal advisory opinion at a public meeting. Id. at 52-302 to -303.

[3] See S. Carolinians for Responsible Gov't v. Krawcheck, No. 3:06-cv-1640-MJP (D.S.C. filed May 30, 2006).

declined to render an informal advisory opinion and suggested that the issue should be resolved instead by a formal advisory opinion of the full Commission. The letter indicated that SCCL could have its request placed on the agenda for the next Commission meeting, scheduled for November 15, 2006.

A few days later, SCCL filed this First Amendment action in district court, naming as defendants the members of the State Ethics Commission.[4] SCCL challenged South Carolina's definition of committee as unconstitutionally overbroad and its definition of "[i]nfluence the outcome of elective office" as both unconstitutionally overbroad and vague. S.C. Code Ann. §§ 8-13-1300(6), -1300(31)(c). SCCL sought a declaration that these provisions were both facially unconstitutional and unconstitutional as applied to it; the organization also sought injunctive relief. Although the complaint was filed about a month before South Carolina's 2006 general election, SCCL specifically asserted its intent to distribute materially similar voter guides before future elections.

On September 27, 2007, the district court dismissed SCCL's action as lacking jurisdiction on the ground that it was not ripe, concluding (i) that the case was not fit for judicial

_____

[4] SCCL also initially named Henry McMaster, the Attorney General of South Carolina, but early on voluntarily dismissed him as a party.

6

decision because the Commission had not taken any action against SCCL and (ii) that SCCL would suffer no considerable hardship from the court's withholding consideration because there was no "imminent threat of Commission action." (J.A. at 208.) SCCL timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291 (2006).

II.

The sole issue on appeal is whether the district court properly dismissed the suit for lack of jurisdiction. The scope of our review is clear: "Jurisdictional questions are questions of law properly reviewed de novo." Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir. 1992). In particular, we review de novo a district court's dismissal for lack of ripeness. Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). It is also settled that "[t]he burden of proving ripeness falls on the party bringing suit." Id. at 319.

The doctrine of ripeness stems from Article III's command that federal courts have jurisdiction only over cases or controversies and represents one of the justiciability doctrines designed to assess whether an actual case or controversy exists. See Allen v. Wright, 468 U.S. 737, 750 (1984) (identifying ripeness, along with standing, mootness, and political question, as "doctrines that cluster about Article III"). As we have

7

noted, "[r]ipeness concerns the 'appropriate timing of judicial intervention.'" Va. Soc'y for Human Life, Inc. v. FEC, 263 F.3d 379, 389 (4th Cir. 2001) (quoting Renne v. Geary, 501 U.S. 312, 320 (1991)). In short, the inquiry is designed to prevent judicial consideration of a dispute "until a controversy is presented in clean-cut and concrete form." Miller, 462 F.3d at 318–19 (citation and internal quotation marks omitted).

To determine whether a claim is ripe, a court must evaluate (i) "the fitness of the issues for judicial decision" and (ii) "the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967). With respect to the first prong, we have noted that "[a] case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Miller, 462 F.3d at 319. As for the second prong, hardship "is measured by the immediacy of the threat and the burden imposed on the [plaintiffs] who would be compelled to act under threat of enforcement of the challenged law." Charter Fed. Sav. Bank, 976 F.2d at 208–09. Importantly, because free speech can be chilled prior to enforcement, a plaintiff bringing a First Amendment claim need only show a "credible threat of prosecution," rather than a "threat of specific future harm." See Doe v. Duling, 782 F.2d 1202, 1206 (4th Cir. 1986). And there is a presumption that a

8

credible threat of prosecution exists "when a statute on its face restricts a party from engaging in expressive activity." Va. Soc'y for Human Life, 263 F.3d at 388.

These principles, applied here, compel the conclusion that this pre-enforcement action is ripe for adjudication. First, the issues in this First Amendment challenge are fit for judicial decision at this time. They are purely legal, and the South Carolina Ethics Act is final. Second, SCCL will suffer hardship if the district court withholds consideration of these issues. With the statute in place, SCCL may not distribute its voter guide unless it undertakes significant compliance measures or is willing to risk prosecution. And the threat of prosecution is sufficiently credible since the South Carolina statute facially restricts SCCL's expressive activities. The controversy is therefore ripe for review.

Nor is this a novel or surprising result; two of our previous decisions are controlling, one of which involved essentially identical facts. In North Carolina Right to Life, Inc. v. Bartlett, 168 F.3d 705, 709 (4th Cir. 1999), a group challenged, among other things, North Carolina's definition of "political committee" after it became concerned that it might be considered a "committee" if it distributed a voter guide, a status that would require it either to register and regularly file reports or to face criminal penalties. To ascertain

9

whether that fear was well-founded, the group wrote to the State Board of Elections, which "did not indicate that it would interpret the statute to mean anything other than what its plain language would suggest." Id. at 710. Consequently, the group refrained from distributing its guide and brought suit in federal district court challenging North Carolina's definition of political committee on the ground that it included entities that engage solely in issue advocacy. Id. at 709. On these facts, the district court reached the merits, and we affirmed, rejecting a case or controversy argument. In reaching this conclusion, we noted that "this case presents a statute aimed directly at plaintiffs who will have to take significant compliance measures or risk criminal prosecution." Id. at 711 (citation and internal quotation marks omitted). In holding that the dispute constituted a case or controversy, we necessarily found the matter to be ripe. Similarly, in Virginia Society for Human Life, we held ripe an issue advocacy group's challenge to the FEC's definition of "express advocacy," even though the FEC had taken no steps to initiate an enforcement action against the group. 263 F.3d at 389–90.

None of the arguments presented by the members of the Commission convince us that this case is distinguishable from either North Carolina Right to Life or Virginia Society for

Human Life.[5] Nor do they persuade us that we should depart from those precedents. Relying on a basis articulated by the district court, the Commissioners first argue that the case's issues are not fit for judicial decision because there has been no administrative action for the court to review, let alone final action, and that SCCL's claims therefore depend on speculative future contingencies. This argument overlooks that SCCL seeks adjudication of the constitutionality of two provisions of state law, not judicial review of the Commission's actions. The challenged provisions are certainly "final and not dependent upon future uncertainties." Miller, 462 F.3d at 319.

With respect to the hardship prong of the ripeness inquiry, the Commissioners first argue that the district court correctly concluded that no hardship had been proved because SCCL failed

---

[5] Neither the Commissioners nor the district court attempted to distinguish North Carolina Right to Life. As for Virginia Society for Human Life, the Commissioners assert the district court's conclusion that the case is distinguishable because the FEC had taken action that injured the Virginia Society for Human Life ("VSHL"), while the Commission simply declined to issue an advisory opinion to SCCL. Yet, the FEC action on which the Commissioners rely was the agency's announcement that it would take no action on VSHL's petition for a rule repealing the challenged regulation. Va. Soc'y for Human Life, 263 F.3d at 382. The FEC had taken no steps to initiate an enforcement action and, indeed, had adopted a policy of not enforcing the regulation in the Fourth Circuit. Id. at 386. We nonetheless found that VSHL faced a credible threat of prosecution because VSHL had alleged intent to engage in issue advocacy outside of the Fourth Circuit; we also noted that the Commission could abandon the policy with a simple vote. Id. at 387–89.

11

to show that it faced "an imminent threat of Commission action." (J.A. 208.) As noted above, however, the controlling cases establish that SCCL need only show a credible threat of prosecution, which they have done here by challenging a statute that facially restricts their expressive activity. Second, the Commissioners argue that SCCL will incur no hardship from the district court's refusal to consider their case at this time because the compliance measures SCCL would be compelled to take if they wished to distribute their voter guides are not particularly burdensome. Although the parties dispute the precise nature of these compliance measures, there is no dispute that SCCL would at least be required to register and then regularly file certified campaign reports regarding its expenditures. We find these measures sufficiently burdensome to satisfy the hardship prong of the ripeness test. Accordingly, because the issues in this matter are fit for judicial review, and because SCCL would incur hardship from the court's refusal to resolve the matter, we find this dispute ripe.[6]

---

[6] The alternative grounds asserted by the Commissioners as supporting the district court's dismissal—(i) that SCCL lacks standing, (ii) that the action has become moot, (iii) that the action should be dismissed pursuant to abstention doctrines, and (iv) that SCCL failed to exhaust administrative remedies—also all fail. First, SCCL has standing to bring this suit for the reasons explained in North Carolina Right to Life and Virginia Society for Human Life. Second, SCCL's action is not moot because, even though SCCL initiated this action with the hope of (Continued)

III.

For the foregoing reasons, we reverse the district court's dismissal on ripeness grounds. The case is remanded for consideration of the merits.[7]

REVERSED AND REMANDED

---

being able to distribute voter guides for an election that has passed, its complaint specifically alleges intent "to distribute materially similar voter guides before future elections." (J.A. 13.) Accordingly, this case "falls under the exception for a case that is capable of repetition yet evades review because of the length of time required for courts to resolve the matter." Va. Soc'y for Human Life, 263 F.3d at 390 n.3. Third, abstention in this case is inappropriate given that "courts have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment because the delay involved might itself effect the impermissible chilling of the very constitutional right the litigant seeks to protect." N.C. Right to Life, 168 F.3d at 711 n.1 (citations and internal quotation marks omitted). Finally, there is no exhaustion requirement that bars SCCL's claim as the "adjudication of the constitutionality of [legislative] enactments has generally been thought beyond the jurisdiction of administrative agencies." Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 (1994) (citation and internal quotation marks omitted).

[7] SCCL urged us to resolve the merits of their First Amendment challenge on appeal, rather than remand. However, we think it most appropriate to remand, with the expectation that the district court will be sensitive to the frequency of election cycles and resolve this matter expeditiously.