Filed:  April 16, 2013

UNITED STATES COURT OF APPEALS
                       FOR THE FOURTH CIRCUIT

                           ───────────────

                            No. 11-1841
                         (3:10-cv-00533-JAG)

                           ───────────────

JANE DOE,

            Plaintiff - Appellant,

            v.

VIRGINIA DEPARTMENT OF STATE POLICE; W. STEVEN FLAHERTY,
Colonel, in his official capacity as Superintendent of the
Virginia Department of State Police; SPOTSYLVANIA COUNTY
SCHOOL BOARD; J. GILBERT SEAUX, in his official capacity as
the Chairman of the School Board of the Spotsylvania County
Schools,

            Defendants - Appellees.

                           ───────────────

                            O R D E R

                           ───────────────

        The Court amends its opinion filed April 12, 2013, as

follows:

        On page 23, first line of footnote 4 carry-over -- the

citation "Post at 22, 33-34" is corrected to read "Post at 28,

42."

                                For the Court - By Direction


                                /s/ Patricia S. Connor
                                        Clerk

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JANE DOE,

    *Plaintiff-Appellant,*

v.

VIRGINIA DEPARTMENT OF STATE
POLICE; W. STEVEN FLAHERTY,
Colonel, in his official capacity as
Superintendent of the Virginia
Department of State Police;
SPOTSYLVANIA COUNTY SCHOOL
BOARD; J. GILBERT SEAUX, in his
official capacity as the Chairman
of the School Board of the
Spotsylvania County Schools,

    *Defendants-Appellees.*

No. 11-1841

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
John A. Gibney, Jr., District Judge.
(3:10-cv-00533-JAG)

Argued: September 18, 2012

Decided: April 12, 2013

Before KING, DUNCAN, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the majority opinion, in which Judge Keenan joined. Judge Keenan wrote a separate concurring opinion. Judge King wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Marvin David Miller, Alexandria, Virginia, for Appellant. Charles Antony Quagliato, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Kenneth T. Cuccinelli, II, Attorney General of Virginia, Richmond, Virginia, for Appellees Virginia Department of State Police and W. Steven Flaherty; Jennifer Lee Parrish, PARRISH, HOUCK & SNEAD, PLC, Fredericksburg, Virginia, for Appellees Spotsylvania County School Board and J. Gilbert Seaux.

---

## OPINION

DUNCAN, Circuit Judge:

Jane Doe brought a challenge to Va. Code sections 9.1–900 *et seq.* and 18.2-370.5, which, together, classify her as a sexually violent offender and prevent her from entering the grounds of a school or daycare without first gaining permission from a Virginia circuit court and the school board or the owner of the daycare. She also challenged the policy of the Spotsylvania County School Board (the "Board"), which she alleges does not allow her to petition anonymously for entry onto school property. The district court dismissed all but one of her claims on the grounds that they were unripe and that she lacked standing. It determined that her remaining claim failed to allege grounds upon which relief could be granted, and dismissed it under Federal Rule of Civil Procedure 12(b)(6).

Doe's complaint includes four counts: she alleges that the defendants have violated her substantive due process, procedural due process, associational, and free exercise rights. The injuries she alleges with respect to the first, third, and fourth of these counts stem from impediments the Virginia statute and the Board policy place on her ability to access school and church property. However, because she has not yet attempted to undertake the requisite steps to access these properties, she cannot demonstrate that these claims are justiciable at this juncture. One component of her second count, her challenge to the law stemming from an alleged denial of procedural due process, on the other hand, is justiciable. However, she fails to state a procedural due process claim upon which relief may be granted. Accordingly, we affirm the district court's dismissal of her claims.

## I.

### A.

Doe was convicted in 1993 of carnal knowledge of a minor without the use of force in violation of Va. Code section 18.2-63. Under Virginia law, she was required to register on the Virginia Sex Offender and Crimes Against Minors Registry (the "Registry"), Va. Code section 9.1-902 (formerly Va. Code section 19.2-298.1), but she would have been able, after a period of time, to petition a Virginia circuit court to have her name removed from the Registry, Va. Code section 9.1-910. However, a 2008 amendment reclassified Doe's crime as a "sexually violent offense," 2008 Va. Acts 877; *see* Va. Code section 9.1-902(E)(1), and because Virginia law does not provide an avenue for sexually violent offenders to petition for removal from the Registry, Doe must now remain on the Registry for life, Va. Code section 9.1-910(A).

As an individual classified as a sexually violent offender, Doe is required to register with the Virginia Department of State Police (the "Department"), which publishes sex offend-

ers' names, photographs, and certain other personal information on a website accessible to anyone browsing the internet. This information is indexed by the zip codes in which the offenders work and live. In addition, and of more consequence in this case, the law prohibits Doe, as a sexually violent offender, from "entering or being present, during school hours, and during school-related or school-sponsored activities upon any property [s]he knows or has reason to know is a public or private elementary or secondary school or child day center property." Va. Code section 18.2-370.5(A). She may, however, gain access through a successful petition to both (1) a circuit court and (2) a school board or owner of a private daycare. Va. Code section 18.2-370.5(B).

Doe lives in Spotsylvania County, Virginia with her husband, eleven-year-old stepson, and two children, who are nearing school age. Unless she gains permission from a Virginia circuit court and the Board, she is not able to meet with her stepson's teachers at school, attend his school functions, or drop him off at or pick him up from school. She contends that these restrictions will require her to homeschool her younger children. According to Doe, the Board provides her with no procedure whereby she may request permission for entry onto school property without revealing her identity and her classification as a violent sex offender. As a result, she claims, any petition she would make to the Board would expose her as a sexually violent offender to members of the school community, which would have dire social consequences for her children. Significantly, Doe may apply under an anonymous pseudonym to the circuit court. *See* Va. Code section 8.01-15.1. She acknowledges that "[a]pplication to the courts is not at issue." Appellant's Br. at 19 n.4. Doe also claims that all the local churches of her faith have Sunday schools, so the prohibition from entering daycare property prevents her from going to church.

It is undisputed that Doe has not attempted to gain permission for entry either from a Virginia circuit court, the Board, or any church or church Sunday school.

## B.

Rather than petition any of these entities, Doe brought a complaint under 42 U.S.C. § 1983 against, *inter alia*, Colonel W. Steven Flaherty, in his official capacity as Superintendent of the Department, and the Board.[1] She alleged violations of her substantive due process, procedural due process, associational, and free exercise rights. Doe claimed that, by maintaining the Registry with her name and information on it and by failing to provide her with a means of petitioning anonymously for access to school grounds, the defendants infringed upon her fundamental right to raise and educate her children. *See Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923). She also argued that Flaherty violated her right to procedural due process under the Fourteenth Amendment by reclassifying her and by publicizing her status as a sexually violent offender on the Registry without affording her a procedure through which to challenge this action, thereby preventing her from entering school and day center property, and that the Board violated her right to procedural due process by failing to provide her with a procedure by which she may anonymously petition to enter school property. Doe's third claim was that the defendants violated her right under the First and Fourteenth Amendments to associate with members of the school community. Finally, Doe argued that Flaherty violated her right under the First and Fourteenth Amendments to the free exercise of religion, because she is prohibited from entering churches of her faith in her area, all of which have Sunday schools.

She asked the district court to declare unconstitutional Va. Code section 18.2–370.5 governing access to schools and the petition process, the 2008 reclassification, and the Board policy; to order the Board to implement a procedure by which she could anonymously petition to enter and remain on school

---

[1]The other parties named in Doe's original complaint are no longer involved in the litigation.

property; to enjoin the Board from exercising its authority to prevent her from entering school property; to enjoin Flaherty from enforcing Va. Code section 9.1–900 *et seq.*, classifying her as a violent sex offender, and collecting, maintaining, and making publicly available her information in the Registry; and to order Flaherty to provide her with a procedure to prove that she is not a dangerous person and, therefore, should not be classified as a sexually violent offender.[2]

The district court dismissed all but one of Doe's claims because they were unripe and because Doe lacked standing. It found that her claim against Flaherty challenging her placement on the Registry met the tests for both ripeness and standing, but ultimately dismissed it under Federal Rule of Civil Procedure 12(b)(6).[3]

## II.

### A.

We review the district court's dismissal of Doe's claims de novo. *See Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (de novo review of dismissal for lack of ripeness or standing); *Goldstein v. Moatz*, 364 F.3d 205, 211 (4th Cir. 2004) (de novo review of dismissal for failure to state a claim under Rule 12(b)(6)). In reviewing the district court's dismissal, we must accept all properly pled factual allegations in the complaint as true and construe all facts in the light most favorable to the plaintiff. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

---

[2]For clarity, this list only includes the defendants that are still involved in the litigation.

[3]Alternatively, it concluded that it must dismiss all of Doe's claims under Federal Rule of Civil Procedure 12(b)(6).

B.

There exist two strands of standing: Article III standing, which ensures that a suit presents a case or controversy as required by the Constitution, and "prudential standing," which encompasses "judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

To have Article III standing, Doe must be able to show that (1) she suffered an actual or threatened injury that is concrete, particularized, and not conjectural; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision. *Miller*, 462 F.3d at 316 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. With the exception of her procedural due process claim against Flaherty, Doe's claims do not satisfy any of these three prongs.

Federal courts also face judicially imposed prudential limits on their jurisdiction "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing doctrine's prudential dimensions are not as definite as its constitutional dimensions, but the Supreme Court has explained that "prudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *Allen*, 468 U.S. at 751). Because we conclude that Doe is unable to meet the requirements for Article III standing for the bulk of her claims, we need not engage in prudential standing analysis. We do note that while none of the pruden-

tial standing limitations appear directly applicable to the current case, the types of concerns underlying them are present.[4]

### 1.

In this case, federalism concerns and our respect for Virginia's processes dictate special caution in evaluating the requirement of standing. The principles of federalism and comity counsel in favor of providing at the least an opportunity for the processes provided for by Virginia's statute to address Doe's claims before intervening. We have no reason to presume that Virginia circuit courts are anything but competent, reasonable, and fair in making determinations regarding whether and under what conditions individual sex offenders should be allowed onto school or daycare property. Those courts, which handle cases such as Doe's with relative frequency, are much better equipped than we to make such determinations in the first instance. Furthermore, to prevent cases such as Doe's from being heard by Virginia state courts would threaten to undermine the consistency with which we presume Virginia courts treat similarly situated sex offenders petitioning for access to school or daycare property. It would also deprive us of a developed factual basis on which to assess her claims.[5]

---

[4]It should also be noted that some courts have dismissed indirect injuries under a theory of prudential rather than constitutional standing. *See Frank Krasner Enters., Ltd. v. Montgomery County*, 401 F.3d 230, 236 n.7 (4th Cir. 2005).

[5]Indeed, far from abandoning our judicial mandate, we advance here only the unremarkable proposition that a plaintiff avail herself of state remedies at her disposal, and be in a position to benefit from the specific relief she seeks, before coming into district court. Our insistence that Doe seek permission from state entities prior to bringing suit in federal court does not amount to requiring exhaustion of state remedies for her constitutional claims. Rather, we are required to wait until Doe obtains a decision from the Virginia authorities in order to contend with an injury—if it still exists after Doe petitions those entities—that affects her with finality. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson*

2.

Doe's claims challenging the constitutionality of Va. Code sections 18.2–370.5 and 9.1–900 *et seq.* based on alleged violations of her substantive due process, associational, and free exercise rights fail under the first prong of our standing analysis. She does not allege an injury in fact, because the harm she alleges is not "actual or imminent," but "conjectural [and] hypothetical." *Lujan*, 504 U.S. at 560. When it comes to her claims regarding her substantive due process, associational, and free exercise rights, she does not allege harm merely from being placed on the Registry, but rather from the consequences her categorization entails for her ability to access school and church property. However, as of yet, these consequences do not affect her with finality, as she has not taken any of the steps necessary to access those properties. Because Doe has not attempted to petition a Virginia circuit court, the Board, or any church, it is far from clear whether she will ultimately be barred from entering these properties. Therefore, any injury to her substantive due process, associational, or free exercise rights she would suffer from not being able to enter a school or a church remains hypothetical. *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 122–23 (4th Cir. 2000) (where it was speculative that a referendum would be called, plaintiff was not injured by provisions allowing for it).

Doe's substantive due process claim against the Board suffers from a lack of specificity and concreteness that makes it unsuitable for determination by this court. While, in consider-

---

*City*, 473 U.S. 172, 193 (1985) ("While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy [v. Bd. of Regents*, 457 U.S. 497 (1982),] concerned the latter, not the former.").

ing a motion to dismiss, we accept properly pled factual allegations as true and construe them in the light most favorable to the plaintiff, "wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss." *Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 624 F.3d 1043, 1080 (9th Cir. 2010) (quoting *Mann v. City of Tucson*, 782 F.2d 790, 793 (9th Cir. 1986) (per curiam)). We do not have an obligation to make Doe's complaint for her.

From a reading of Doe's complaint, it appears that the injury she alleges arises from an outright denial of her ability to enter school property. In her brief to this court and at oral argument, however, the gravamen of this claim took on a more nuanced character—she alleged injury arising from the lack of a policy by which she could petition for entry to the school anonymously, which she claimed would reveal her to be a sexually violent offender and cause her children to be subject to ridicule at school. With such a shifting characterization of her injury, "there can be no confidence of 'a real need to exercise the power of judicial review' or that relief can be framed 'no (broader) than required by the precise facts to which the court's ruling would be applied.'" *Warth*, 422 U.S. at 508 (quoting *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 221-222, (1974)). As pled, her alleged substantive due process injury at the hands of the Board is thus insufficiently concrete to be addressed by this court.

Doe's procedural due process claim against Flaherty, on the other hand, alleges an injury in fact. Doe asserts that Flaherty violated her right to procedural due process under the Fourteenth Amendment by reclassifying her as a sexually violent offender and making her reclassification publicly available in the Registry without affording her a procedure by which to challenge these actions. Unlike other consequences of the law, which have not yet taken effect with finality, Doe has been reclassified as a sexually violent offender and placed on the Registry already. She has no mechanism internal to the Vir-

ginia statutory scheme by which to challenge this reclassification. Her alleged injury to her right to procedural due process is thus in no way hypothetical, and it is sufficiently concrete for a federal court to address it.

3.

The second and third prongs of our standing inquiry require us to determine whether Doe's alleged injuries are fairly traceable to a defendant's conduct, and whether a favorable decision would be likely to redress these injuries.[6] Traceability is established if it is "likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (citing *Lujan*, 504 U.S. at 561). An injury is redressable if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181, (2000). Still, "no explicit guarantee of redress to a plaintiff is required to demonstrate a plaintiff's standing." *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 100 (4th Cir. 2011).

The traceability and redressability prongs become problematic when third persons not party to the litigation must act in order for an injury to arise or be cured. "An injury sufficient to meet the causation and redressability elements of the standing inquiry must result from the actions of the respondent, not from the actions of a third party beyond the Court's control." *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009) (citing *Krasner*, 401 F.3d 230 at 234-35); *see Lujan*, 504 U.S. at 568–71 (plurality opinion) (no redressability where other federal agencies not bound by the Secretary

---

[6]We discuss the traceability and redressability prongs of the standing analysis jointly, because "they rise or fall together in this case." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 323 n.1 (4th Cir. 2002).

of the Interior's regulations would have to act in order for the plaintiffs' alleged injury to be remedied); *Allen*, 468 U.S. at 758-59 (conclusion that withdrawal of tax exemptions would lead to a school changing its policies was "entirely speculative," making "[t]he links in the chain of causation between the challenged Government conduct and the asserted injury . . . far too weak for the chain as a whole to sustain [plaintiffs'] standing"); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) (injury to plaintiffs must "be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court").

A plaintiff faces a related obstacle to establishing traceability and redressability when there exists an unchallenged, independent rule, policy, or decision that would prevent relief even if the court were to render a favorable decision. For example, we have held that where the free speech rights of a fraternity's members may have been infringed when they were punished for singing and marching in front of a university library, because other "adequate and independent" grounds for the sanctions existed, the fraternity's claim was "not redressable because a ruling on that claim would not alter that conclusion." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 148-49 (4th Cir. 2009) (citation omitted). Similarly, where an unchallenged regulation would prevent a plaintiff from installing a billboard even if we struck down the challenged regulation, we have found redressability lacking. *Covenant Media of S.C., LLC v. City Of N. Charleston*, 493 F.3d 421, 430 (4th Cir. 2007).

Doe's challenges to the Virginia statute based on Flaherty's alleged violations of her substantive due process, associational, and free exercise rights fail under the final two prongs of our standing analysis. Because the harm that forms the basis for these counts arises from her inability to access school or church property, and because the statute allows for third parties to grant her permission to enter these properties,

she cannot demonstrate traceability or redressability. As Doe has not yet tried to petition a Virginia circuit court, the Board, or any church, we have no way of knowing whether she will ultimately be unable to enter her children's school or a church of her faith, and it is purely speculative whether action by this court would have any effect on her ability to enter school or church property.[7] She has thus failed to establish either traceability or redressability with respect to the law's impact on her substantive due process right to raise and educate her children, her right to associate with members of the school community, and her right to the free exercise of religion.

Doe's claims against the Board also fail under the traceability and redressability prongs of our standing inquiry. Doe alleges that she is injured by not being able to enter school grounds without going through a process that would reveal her status as a "sexually violent offender," arguing that she "ought to be allowed to proceed under a pseudonym with the School Board so as not to subject her small children to ridicule, debasement, and embarrassment, which they would suffer, if labeled the children of a sex offender by their peers and in the school community." Appellant's Br. at 21. Alternatively, one may read her complaint as alleging that she is harmed by not being able to enter the school at all—that the Board violated her substantive due process right by exercising

---

[7]It should be noted that where a plaintiff "seek[s] immediate relief from a federal court as a necessary antecedent to the ultimate relief he seeks from a different entity, like an administrative agency," that plaintiff can meet the redressability prong by "demonstrat[ing] that a favorable decision from the federal court likely would provide him immediate relief, but need not demonstrate that it likely would provide him the ultimate, discretionary relief sought from the agency." *Townes v. Jarvis*, 577 F.3d 543, 547-548 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998)). Here, although Doe must obtain permission from both the Virginia circuit court and the Board, obtaining permission from the Board is not a "necessary antecedent" to obtaining permission from the court; the statute does not specify any particular order in which a petitioner must proceed. *See* Va. Code section 18.2-370.5(B).

its "authority to decide whether a registrant classified as a sexually violent offender . . . may enter school property and under what conditions," J.A. 15, and by banning her "from school grounds, parent-teacher conferences, dropping off or picking up her children from school, and school-sponsored activities." Appellant's Br. at 20. She also alleges that the Board's policy violates her right to procedural due process and that being banned from school property violates her right to associate with members of the school community. Even if we were to order the Board to implement a procedure by which she could anonymously petition to enter and remain on school property, or to require it to admit her without any petition at all, Doe would still need permission from a Virginia circuit court. We have no way of knowing, and Doe is obviously unable to assert, how that court would respond to such a petition; nor have we any control over its decision. Moreover, Doe does not challenge the requirement that she obtain permission from the Virginia court. The circumstances here are thus in line with our precedent declining to find redressability where an additional, unchallenged rule could prevent a plaintiff from having her injury cured. It therefore remains purely speculative whether any action by this court with respect to the Board's policy would redress Doe's alleged injury of not being able to obtain entry into school property, or of not being able to do so with anonymity.[8]

---

[8]We note that if Doe were to successfully petition the Virginia circuit court, she would be able to demonstrate traceability and redressability with respect to her claim that the Board's policy against anonymous petitions to enter school grounds infringes her right to raise and educate her children. If, on the other hand, her petition to that court were unsuccessful, the adjudication would leave us with a set of facts that more adequately crystallizes the issue for federal judicial review. *Cf. Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1313 (D.C. Cir. 2004) ("In examining the fitness of an issue for our consideration, we are primarily concerned with whether . . . the court and the agency would instead benefit from postponing review until the agency's policy has 'crystallized' through implementation in a concrete factual setting."). Neither has occurred, and the injury is not sufficiently final for our review.

With respect to her procedural due process claim against Flaherty, on the other hand, Doe is able to demonstrate traceability and redressability. She alleges an injury to her right to adequate process to challenge her reclassification and the publication of her status as a sexually violent offender on the Registry. This injury is directly traceable to Va. Code sections 9.1–900 *et seq.*, which Flaherty has implemented. Where the injury complained of is the reclassification itself, Doe meets the requirements of traceability and redressability, because she has already been reclassified and is afforded no procedure by which to challenge her reclassification.[9] If we were to agree with Doe and hold that the law is unconstitutional, the alleged injury to her procedural due process right would be removed.

---

[9]In contrast, a plaintiff cannot establish standing when the alleged injury stems originally from the law complained of but its effect is mediated by a third party, *see Krasner*, 401 F.3d 230 at 234-35, or where we are uncertain whether the injury would be removed were we to rule in the plaintiff's favor, *see Iota Xi*, 566 F.3d at 148-49. Although we find that Doe's alleged procedural due process injury is engendered by the challenged law directly, we cannot agree with the dissent that the alleged injury to her substantive due process right to raise and educate her children is linked to the law or to the Board's policy in a similarly proximate manner. In coming to the conclusion that the alleged substantive due process injury is directly linked to the challenged law, the dissent's analysis conflates Doe's procedural due process and substantive due process arguments. While the procedural injury of classification without redress is directly traceable to the Virginia statute, the intermediate roles that the state's regulatory scheme for dealing with sex offenders lays out for the Board and the Virginia circuit court prevent us from finding traceability or redressability at this stage of Doe's travails. Having not sought to anonymously petition the Board or requested permission from a Virginia circuit court to enter school property, Doe cannot show that her alleged inability to access her childrens' school free of stigma is a result of the Board's policy or, directly, of the Virginia statute. Moreover, were we to declare the Board's procedure—or lack thereof—unconstitutional, Doe would nonetheless have to petition a Virginia circuit court for permission to enter school property. If she were to do so and be denied permission, we would be confronted with an injury traceable to the Board or to officers of the state of Virginia and, as a result, a firmer factual record upon which to base a holding.

## C.

Along with lacking traceability and redressability, and for similar reasons, the majority of Doe's claims are not ripe for judicial determination. A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact "remains wholly speculative." *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996). In determining ripeness, "we balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration. A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller*, 462 F.3d at 319 (citations and internal quotation marks omitted). Like the redressability requirement for standing, ripeness doctrine prevents us from considering a controversy until it is presented in "clean-cut and concrete form." *Rescue Army v. Mun. Ct. of Los Angeles*, 331 U.S. 549, 584 (1947).[10] As with standing, the party bringing the suit bears the burden of proving ripeness. *See Miller*, 462 F.3d at 319.

Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court. *See Franks v. Ross*, 313 F.3d 184, 195 (4th Cir. 2002) (where county and state agency had "interwoven involvement" in a permitting process, controversy was not ripe until the completion of the final step of the process); *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208-09 (4th Cir. 1992) (where an agency was required to make multiple decisions and take sev-

---

[10]Ripeness analysis holds much in common with standing analysis. *See Miller*, 462 F.3d at 319 (quoting Erwin Chemerinsky, *Federal Jurisdiction* § 2.4 (4th ed. 2003) ("Although the phrasing makes the questions of who may sue and when they sue seem distinct, in practice there is an obvious overlap between the doctrines of standing and ripeness.")). While we discuss ripeness separately from standing, the reasons for which the majority of Doe's claims are not ripe are essentially the same as the reasons for most of her alleged injuries are not redressable.

eral actions before an injury could occur, the issues at hand were not ripe for judicial decision). Because Doe has yet to petition a Virginia circuit court for permission to enter school or church property, all of her constitutional claims except that arising from Flaherty's alleged violation of her right to procedural due process are dependent on future uncertainties and thus not ripe for judicial decision.

The hardship prong of our ripeness analysis is "measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." *Charter Fed. Sav. Bank*, 976 F.2d at 208-09. In considering the hardship to be balanced against the fitness of the issues for review, we may consider the cost to the plaintiff of delaying review. *Miller*, 462 F.3d at 319. While the Virginia law itself is harsh on Doe, requiring her to wait to bring this case to federal court until after she has sought permission from a Virginia circuit court will not cause her undue hardship.[11]

In concluding that the majority of Doe's claims are not ripe for decision, we note the limited nature of our determination: it would appear that were Doe to petition a Virginia circuit court, the traceability, redressability, and ripeness concerns we have noted here would be addressed.[12]

Doe's procedural due process claim against Flaherty, on the other hand, is ripe. Because she has already been reclassified as a sexually violent offender and this reclassification has been publicized on the Registry, and because Doe currently

---

[11]This is particularly true when it comes to Doe's claims stemming from the Board's policy. Although we recognize the burden inherent in further litigation, the fact remains that even if we were to strike down that policy at this juncture, Doe would have to petition a Virginia court.

[12]We note that Doe is a sympathetic plaintiff who may be able to obtain a mechanism for anonymous process of appeal to the Board when she is in a position to benefit from it. We expect that if she does not succeed in doing so, we will see her back in federal court in short order.

lacks any means internal to Virginia's statutory scheme to challenge her reclassification, the injury she alleges has already occurred and is not merely speculative.

### D.

The only claim for which Doe can demonstrate standing and ripeness is her procedural due process claim against Flaherty. That claim, however, cannot withstand Flaherty's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Doe argues that her reclassification and the publication of her status as a sexually violent offender on the Registry without an opportunity to challenge these actions violates her right to due process. The Supreme Court foreclosed this argument in *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). In that case, a sex offender made essentially the same argument that Doe now makes: that inclusion in an online registry without a hearing violated his right to due process. The Supreme Court held that "even if [the sex offender] could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of all sex offenders—currently dangerous or not—must be publicly disclosed. . . . [A]ny hearing on current dangerousness is a bootless exercise." *Id.* at 7-9.[13] Because *Conn. Dep't of Pub. Safety* controls

---

[13]Doe attempts to distinguish this case from *Conn. Dep't of Pub. Safety*, arguing that both the statutory scheme and her claims are distinct. She posits that Virginia's law, unlike Connecticut's, makes an offender's dangerousness a material part of the statute, citing the section of the Virginia statute laying out its purpose, which is to protect communities, families and children from sex offenders. *See* Va. Code § 9.1-900. The cases are not distinguishable on this ground: the Supreme Court recognized that the Connecticut statute was likewise "designed to protect its communities from sex offenders," *Conn. Dep't of Pub. Safety*, 538 U.S. at 4. As with the Virginia statute, the registry Connecticut's statute provided for was based on "an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." *Id.* at

in this case, we must conclude that Doe's allegation that Flaherty violated her right to procedural due process fails to allege grounds upon which relief could be granted.

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

BARBARA MILANO KEENAN, Circuit Judge, concurring:

Jane Doe had a sexual relationship with a minor child who was a student under her supervision. For this offense, Doe was convicted of the felony of having carnal knowledge of a minor child between thirteen and fifteen years of age. Va. Code § 18.2-63.

In 2008, a change in Virginia law resulted in Doe's offense being classified as a "sexually violent offense." Va. Code § 9.1-902(E). This change had significant adverse consequences for Doe that lie at the heart of this appeal. Notably, after 2008, individuals classified as sexually violent offenders in Virginia may enter onto school property during school hours or school-related activities only after having obtained permission from a Virginia circuit court and the local school board or private school owner. Va. Code § 18.2-370.5.

---

7. Doe further argues that in contrast to the plaintiffs in *Conn. Dep't of Pub. Safety*, she alleges not mere harm to reputation, but infringement on her fundamental right to rear her children. *Conn. Dep't of Pub. Safety* bars this argument as well. Regardless of the nature of her allegations, Doe has been afforded due process in the form of a trial for her underlying offense. *See id.* ("[E]ven assuming, *arguendo*, that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute.").

Doe presently has three children. She alleges that she is unable to direct their educational upbringing as she sees fit because she is classified as a sexually violent offender and, therefore, is prohibited under Virginia law from entering onto school or daycare property. She also alleges that she will be forced to "home school" her children due to the logistical difficulties in transporting them to and from school as a result of this classification.

Admittedly, this classification may strike some as unfair. It might appear that Virginia has subjected Doe to additional punishment after she has "served her time." Or, one might argue that Doe at least should have had the chance to prove that she never was "sexually violent," considering the facts of her conviction and given that she has not been convicted of any other offenses.

But Doe was not entitled to any such hearing before her classification. As the majority opinion recognizes, Doe's procedural due process argument is foreclosed by the Supreme Court's holding in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003). Moreover, the dissent does not dispute this conclusion. Virginia classified Doe as a sexually violent offender based solely on the fact of her conviction, and she received sufficient process regarding her actions when she initially was convicted. Also, Doe has not asserted that her classification imposed additional punishment after her conviction, in violation of the Ex Post Facto Clause.[1]

Instead, Doe's allegation is limited to her contention that she cannot raise her children as she sees fit because, having been classified as a sexually violent offender, she is barred from entering onto school property. Despite this contention, Doe has not sought permission from a Virginia court or the

---

[1]We observe that the Supreme Court has rejected an ex post facto challenge to Alaska's sex offender registration statute. *Smith v. Doe*, 538 U.S. 84, 105-06 (2003).

local school board to obtain access to school property, as permitted by Virginia law. *Ante* at 4. Rather than avail herself of these options provided under the very law she challenges, Doe has filed this suit in federal district court asserting numerous violations of her substantive and procedural due process rights, associational rights, and right to exercise her religious beliefs, all flowing from the effects of her classification.

As the majority opinion explains, before we consider the merits of Doe's constitutional claims, we first must be satisfied of our jurisdiction. The burden of proof lies squarely on Doe to show that she has standing to invoke federal jurisdiction, and that her claims are ripe. *See David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013); *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). I fully agree with the majority opinion's analysis that Doe has not met her burden in either respect.[2]

While the nature of the injury that Doe asserts is something of a moving target, the question whether she suffers from any injury at all depends on the manner in which Section 18.2-370.5 applies to the facts and circumstances of her case. The record in this regard is materially deficient.

Because Doe has not sought relief from a Virginia circuit court and the local school board, we have no way of knowing whether Doe ultimately will obtain unconditional access to her children's school, whether Doe will be granted access subject to certain conditions, or whether she will be allowed any access at all. We cannot conclude that Doe suffers a "concrete and particularized" injury necessary to show standing when her asserted injury may never materialize. *See Alphin*, 704 F.3d at 333 (citation omitted).

Similarly, due to her failure to seek relief provided by Vir-

---

[2]Doe has shown standing and ripeness with respect to her procedural due process claim. *Ante* at 17. Her remaining constitutional claims, however, encounter these justiciability hurdles.

ginia law, the controversy lacks finality and remains "dependent on future uncertainties" and, therefore, is not ripe. *See Miller*, 462 F.3d at 319. Doe's claims "rest[ ] upon contingent future events that may not occur as anticipated, or indeed may not occur at all," namely, whether she will be denied access to school property. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). Accordingly, Doe has not met her burden of demonstrating standing and ripeness.[3]

Nor can we ignore the manner in which Doe has chosen to plead her case and her decision to raise as-applied, rather than facial, challenges. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) ("Because the question of ripeness depends on the timing of the adjudication of a particular issue, it applies differently to facial and as-applied challenges.") (citation omitted). An as-applied challenge attacks the constitutionality of a statute "based on a developed factual record and the application of a statute to a specific person." *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc). By contrast, a litigant asserting a facial challenge contends that a statute always operates in an unconstitutional manner. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

Although Doe has asserted as-applied constitutional challenges, we can do little more than guess at this time how the Virginia statutes and the school board policy would be applied to her circumstances. Indeed, the factual record required for us to render a decision on Doe's as-applied challenges cannot be developed without action on her part seeking relief under Virginia law.[4] *See Harris*, 564 F.3d at 1308 (as-

---

[3]Doe's challenge to the school board's lack of a procedure to permit anonymous applications suffers from the same standing and ripeness infirmities, because it is not clear at present that Doe will be unable to petition the school board anonymously simply based on the absence of a written policy.

[4]A remand for further discovery, which the dissent argues is appropriate in this case, will not remedy the deficiency in Doe's failure to show stand-

applied challenge "necessarily requires the development of a factual record" on how statute applies "in particular circumstances").

The dissent argues, nevertheless, that Virginia law interferes with Doe's right to raise her children and thus renders her claims justiciable. In support of this position, the dissent cites *Patsy v. Board of Regents*, 457 U.S. 496 (1982), an inapposite decision on which Doe has not relied.

The decision in *Patsy* stands for the principle that plaintiffs invoking 42 U.S.C. § 1983 generally "need not exhaust state administrative remedies before filing suit." 457 U.S. at 516. This principle is undisputed but, tellingly, is immaterial to the resolution of this appeal.

There is a clear distinction between the requirement that administrative remedies be exhausted and the requirement that a challenged action be final before it is judicially reviewable. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192 (1985). As the Supreme Court explained in *Williamson County*,

> the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

---

ing and ripeness. *Post* at 28, 42. Further discovery would not enlighten the parties or this Court on the issue whether and to what extent Doe's ability to enter onto school property would be restricted by a Virginia court and her local school board. Rather, this record can be developed only upon Doe's application to those entities.

473 U.S. at 193. The holding in *Patsy* addressed the principle of exhaustion of administrative remedies, not the requirement before us that a litigant must be aggrieved from a final, reviewable decision. *See Williamson Cnty.*, 473 U.S. at 193.

Doe is not required to seek a determination in a Virginia forum that her rights were violated before filing a § 1983 action in federal court. *See id.* For example, Doe was not required to file suit in a Virginia court seeking a declaratory judgment that her classification as a sexually violent offender was unlawful, or that the Virginia sex offender statutes at issue here are unconstitutional. *Cf. id.* (litigant not required to seek a declaratory judgment in state court to contest zoning action taken by county authorities). Nor was Doe required to appeal a rejection from the school board to a Virginia circuit court. *Cf. id.* (litigant not required to appeal from planning commission to the board of zoning appeals).

Doe is required, however, to petition a Virginia circuit court and the local school board, in their capacities as "initial decisionmaker[s]," to determine whether and under what conditions she will be granted access to school property. *Cf. id.* at 193-94 (litigant required to pursue procedure to obtain variance, which "would result in a conclusive determination by the Commission whether it would allow" construction of a development). Unless Doe resorts to the process afforded her, those entities will not "arrive at a definitive position on the issue that inflicts an actual, concrete injury." *See id.* at 193.

The Virginia legislature expressly has designated the Virginia circuit courts and the local school boards as the initial decisionmakers in cases of this nature. The reason underlying this legislative choice is plain. In considering such issues, the Virginia circuit courts and the local school boards are uniquely situated to consider questions of child safety and school administration. Manifestly, federal courts do not possess such expertise, and should not serve as vehicles for par-

ties to circumvent state law by considering premature constitutional challenges.

Far from "stonewall[ing]" Doe's access to the courthouse, *post* at 27, the majority merely requires that Doe meet her burden of showing that her injury is concrete, and that her claim is final, before filing suit in federal court. To date, Doe has not made this required showing, but need take only limited additional steps before her claims will be justiciable in federal court. *Ante* at 17 n.11. For these reasons, I fully concur in the majority opinion.

KING, Circuit Judge, dissenting:

A Virginia criminal statute forbids carnal knowledge of a child thirteen or fourteen years old, "without the use of force" on the part of the offender. *See* Va. Code § 18.2-63. Not long ago, we determined that this statutory offense is not, for federal sentencing purposes, a violent felony. *See United States v. Thornton*, 554 F.3d 443 (4th Cir. 2009). Jane Doe was convicted of the offense in 1993, for which she was actually incarcerated a grand total of thirty days. Fifteen years later, in 2008, without further wrongdoing on her part, the Commonwealth statutorily reclassified Ms. Doe's 1993 conviction as one for a "[s]exually violent offense." Va. Code § 9.1-902(E)(1).

On June 25, 2010, Ms. Doe filed this § 1983 action seeking declaratory and injunctive relief, and alleging in no uncertain terms that "*[b]ecause of her 2008 reclassification*, [she] . . . is prohibited from 'entering and being present, during school hours and during school-related and school-sponsored activities' on any property that is a public or private school." Complaint ¶ 16 (emphasis added) (paraphrasing Va. Code § 18.2-370.5(A)). The prohibition applies to "[e]very adult who is convicted of a sexually violent offense," with a violation "punishable as a Class 6 felony." Va. Code § 18.2-370.5(A), (D).

Ms. Doe elaborates that she "has two biological minor children, James Doe, age four, and Judy Doe, age two, and one minor stepchild who is under her care and control, John Doe, age nine." Complaint ¶ 20. Before being reclassified, Ms. Doe "was involved in John Doe's education at private and public schools in the Commonwealth of Virginia, including attending parent-teacher conferences and school activities." *Id.* Following her 2008 reclassification, however, Ms. Doe has not set foot on school property. *See id.* Apart from no longer being able to attend school conferences or John's extracurricular events, Ms. Doe cannot drive John to school when he misses the school bus or pick him up when he needs to leave early because of illness or medical appointments, *see id.* at ¶¶ 24-26, a state of affairs that, she insists, will compel her "to home school James Doe and Judy Doe, contrary to her preference that they attend public school." *Id.* at ¶ 31.

To briefly recap, then, Ms. Doe has alleged (1) state action, in the form of a specific legislative enactment, that (2) is interfering — and will continue to interfere — with her prerogative to have her children educated in the manner that she sees fit. In *Meyer v. Nebraska*, the Supreme Court long ago acknowledged "the natural duty of the parent to give his [or her] children education suitable to their station in life." 262 U.S. 390, 400 (1923). The Court identified the discharge of this duty as a "fundamental right[ ]," *id.* at 401, nestled within those liberties protected by the substantive due process component of the Fourteenth Amendment, none of which may "be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect," *id.* at 400.

Armed with our decision in *Thornton*, Ms. Doe appears well positioned to argue her entitlement to § 1983 relief. The notion that Virginia could recast Ms. Doe as a violent offender for being convicted of a non-violent offense does, after all, seem counterintuitive; the legislative action taken by

the Commonwealth could plausibly be portrayed as arbitrary and unreasonable. My fine colleagues in the majority, however, have stonewalled Ms. Doe at the courthouse door, concluding that she lacks standing to pursue her substantive due process claim, and that, were it otherwise, the claim would yet be unripe for adjudication. The majority can defend its startling decision only by refusing to acknowledge that the starting point for Ms. Doe's federal challenge is the state statute that reclassified her, and not the means afforded by the Commonwealth to escape some of the consequences of that reclassification.

The majority makes no effort to conceal that its determination with respect to standing and ripeness rests solely on its observation that Ms. Doe has not petitioned the county circuit court or local school board to secure relief from the entry bar. The majority's insistence that Ms. Doe avail herself of state recourse as a necessary precursor to federal adjudication of her constitutional claim represents an unprecedented abdication of our judicial role, and its holding today is directly contrary to *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496 (1982). *Patsy* was a civil rights action alleging reverse discrimination in employment, in which the defendant state entity contended that it should be afforded the threshold opportunity to address and resolve the plaintiff's claim. The Supreme Court vigorously disagreed, revisiting established precedent to demonstrate that it had "on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies." *Id.* at 500 (citations omitted).

The majority pays little heed to *Patsy*, and it offers no justification for its neglect. The justiciability doctrines of standing and ripeness, though closely related to each other, are readily distinguishable from the procedural prerequisite of exhaustion. Following the misbegotten lead of the district court, the majority has erroneously cloaked a procedural exhaustion question (and not much of one at that) in the guise of substan-

tive justiciability, a concept alien and irrelevant to the facts at hand. As explained in more detail below, I would invoke *Patsy* and its progeny to reverse the district court's judgment with respect to Ms. Doe's substantive due process claim, remanding for discovery on her allegations of constitutional injury. Because the majority's decision represents a radical departure from binding precedent, I respectfully dissent.

I.

A.

Ms. Doe straightforwardly contends that she has been unlawfully barred from her stepson's school and daycare facility. The majority admits as much: "[S]he does not allege harm merely from being placed on the [offender] Registry, but rather from the consequences her categorization entails for her ability to access school . . . property." *Ante* at 9. Indeed, the majority elsewhere acknowledges the gravamen of Ms. Doe's primary claim: "[O]ne may read her complaint as alleging that she is harmed by not being able to enter the school at all." *Id.* at 13. The majority's plain statements of Ms. Doe's case belie its caterwaul that her substantive due process claim "suffers from a lack of specificity and concreteness that makes it unsuitable for determination by this court." *Id.* at 9.

The majority correctly derives from the Complaint "that the injury she alleges arises from an outright denial of her ability to enter school property." *Ante* at 10. It asserts, however, that Ms. Doe has abandoned this contention on appeal by maintaining instead that her injury has arisen "from the lack of a policy by which she could petition for entry to the school anonymously." *Id.* Although Ms. Doe has, without question, urged our attention to the supposed defects in the school board's policy, and in particular the anonymous-petition aspect, she has done so as part and parcel of her subordinate procedural due process claim. *See* Complaint ¶ 45.

Ms. Doe's supposed emphasis on the procedure provided by the Commonwealth to procure an exception to the statutory entry bar cannot be interpreted to suggest that she has surrendered her substantive due process claim, which, through repeated mention to this Court, remains alive and well on appeal. For example: "[Virginia's statutory] scheme denies her entry on school grounds . . . because her offense was redefined fifteen years after the case was over." Br. of Appellant 19. Again: "[T]hat Jane Doe has not applied to the School Board for permission to enter school grounds . . . does not excuse the statutory scheme's . . . unconstitutionality." *Id.* And again: "Jane Doe's suit sought to challenge the constitutional validity of the limits placed on her parenting by the statutory scheme *and* School Board policy." *Id.* at 29 (emphasis added). Once more: "The district court also never addressed whether the statutory scheme was narrowly tailored, which is part of Jane Doe's claim." *Id.* at 31. Finally, right off the bat at the argument of this matter, counsel for Ms. Doe explained the foundation of his client's grievance:

> Fifteen years later, Virginia decides that they're going to classify her as a violent sexual offender, based on the status of her case — nothing to do with her or the facts of her case or anything else. . . . And the offense at the time was nonviolent in its own definition. The consequence of that is that there are restrictions on her for life.

Oral Argument at 1:04, Doe v. Va. Dept. of State Police (No. 11-1841), *available at http://www.ca4.uscourts.gov/ OAaudiotop.htm*.

The "statutory scheme" to which Ms. Doe repeatedly refers no doubt encompasses those discrete provisions requiring her lifetime registration, excluding her from school property, and establishing a procedure to permit her reentry. But it also surely includes Virginia Code section 9.1-902(E)(1), which reclassified her at the threshold as a violent offender and

brought each of the aforesaid provisions into play. Although the majority professes, in quite conclusory terms, that Ms. Doe's substantive due process claim "suffers from a lack of specificity and concreteness," *ante* at 9, the irony is palpable: it can point to no specific and concrete reason why that is so.[1]

B.

1.

The impetus driving the majority's decisionmaking is no mystery; the basis therefor is readily discerned from its discussion. Ms. Doe's substantive due process claim is nonjusticiable, declares the majority, "because *she has not yet attempted to undertake the requisite steps* to access these properties." *Ante* at 3 (emphasis added). According to the majority, the "consequences" to which it refers, suffered by Ms. Doe as the direct result of her reclassification, "do not affect her with finality, as *she has not taken any of the steps*

---

[1]The majority's failure to properly compartmentalize Ms. Doe's claims, and to associate therewith the particular statute to which each relates, is manifest in my good colleague's concurring opinion. The concurrence scolds Ms. Doe for not pursuing the avenues of relief from the entry bar "provided under the very law she challenges." *Ante* at 21 (Keenan, J., concurring). These avenues of redress before the circuit court and the county school board are spelled out in Virginia Code section 18.2-370.5. But, more fundamentally, Ms. Doe also challenges her reclassification pursuant to Virginia Code section 9.1-902(E)(1). There is no avenue of redress in the reclassification statute; thus, the only way Ms. Doe can avoid its effects is to obtain a court injunction. Consequently, the concurrence misses the mark by maintaining that "the question whether [Ms. Doe] suffers from any injury at all depends on the manner in which Section 18.2-370.5 applies to the facts and circumstances of her case." *Id.* at 21. To the contrary, the nature and extent of Ms. Doe's injury more proximately depends on the applicability of section 9.1-902(E)(1). Because a ruling in Ms. Doe's favor on her substantive due process claim stemming from her reclassification would moot the need for redress under section 18.2-370.5, the concurrence's protestations as to an underdeveloped factual record on Ms. Doe's procedural due process claim, *see id.* at 22-23, relating primarily to the latter statute, are quite beside the point.

*necessary* to access those properties." *Id.* at 9 (emphasis added). The majority thus determines that Ms. Doe lacks standing to sue, and it concludes further that "[b]ecause *Doe has yet to petition a Virginia circuit court* for permission to enter school . . . property, all of her constitutional claims except [her procedural due process claim against the State Police Superintendent] are dependent on future uncertainties and thus not ripe for judicial decision." *Id.* at 17 (emphasis added). Thus, the majority surmises that "it would appear that *were Doe to petition a Virginia circuit court,* the traceability, redressability, and ripeness concerns we have noted here would be addressed." *Id.* at 17 (emphasis added).

The fatal flaw in the majority's reasoning is that *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496 (1982), specifically prohibits interposing any administrative exhaustion requirement — such as petitioning a school board — as a roadblock to seeking resolution of a constitutional claim in a federal court. And while "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States," *Tafflin v. Levitt*, 493 U.S. 455, 458-59 (1990) (citations omitted), those courts' concurrent jurisdiction of § 1983 actions has never been construed, expressly or impliedly, as conferring upon them exclusive or preferential domain. Hence, though I have no quarrel with the majority's presumption that the Virginia courts are "competent, reasonable, and fair," *ante* at 8, that is quite beside the point. It has always been the case that, when it comes to choosing from among available fora, "the plaintiff is the master of the complaint." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) (citation and internal quotation marks omitted).

Exceptions to the rule in *Patsy* have subsequently been identified, but none of them applies here. The most significant development in the law occurred in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986), in which the Supreme Court invoked the abstention

doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), to deny federal court access to a faith-based school seeking to enjoin the advancement of an administrative inquiry instituted by a state agency charged with investigating and punishing employment discrimination.

The Court distinguished the coercive proceedings at issue in *Ohio Civil Rights Commission* from those in *Patsy*, in which the plaintiff had sought recourse in the federal courts strictly to remedy the alleged discrimination against her. *See Ohio Civil Rights Comm'n*, 477 U.S. at 627 n.2. In *Moore v. City of Asheville*, 396 F.3d 385 (4th Cir. 2005), we acknowledged the general rule that "claimants bringing suit in federal court under 42 U.S.C. § 1983 need not exhaust their administrative remedies," while noting the Supreme Court's exception for "pending state administrative proceedings that are coercive in nature." *Id.* at 395 n.4 (citing *Patsy* and *Ohio Civil Rights Comm'n*).[2]

We affirmed in *Moore* the district court's reliance on *Younger* abstention to forestall federal intervention prior to final resolution of coercive state criminal proceedings against the plaintiff. Notwithstanding that no such proceedings were technically pending — the plaintiff had been issued citations and paid the fines assessed thereon, but had foregone appeal beyond the initial stage — we determined the plaintiff's situation to be the functional equivalent of that in *Ohio Civil Rights Commission*, and we remanded for dismissal of his

---

[2]*Patsy* similarly does not apply where Congress has explicitly or implicitly provided for the exhaustion of state administrative remedies as a prerequisite to suit in federal court. *See Talbot v. Lucy Corr Nursing Home*, 118 F.3d 215, 219 (4th Cir. 1997). Congress's intent in this regard may be discerned as implicit whenever it "may be fairly understood from congressional action." *Id.* (citations and internal quotation marks omitted). Importantly, "[i]f there is doubt as to whether an exception applies, courts should refrain from requiring exhaustion in § 1983 suits because *Patsy* leaves no doubt that the presumption is *strongly* in favor of no exception." *Id.* (citation and internal quotation marks omitted).

complaint. *See Moore*, 396 F.3d at 395-96 ("We find the rationale behind the Court's holding . . . equally applicable where the administrative proceedings are no longer pending because of the plaintiff's failure to exhaust his administrative appellate remedies.").

Here, the majority faults Ms. Doe for declining to pursue what it considers the mandatory administrative course of filing a petition with the school board to set aside the entry bar. In so doing, the majority overlooks that a nonexistent proceeding could hardly be "pending" for abstention purposes. Further, seeking the school board's largesse as prescribed by the majority is patently a remedial proceeding squarely within the ambit of *Patsy*, and not in the nature of a punitive, coercive proceeding that would be governed by *Ohio Civil Rights Commission*. Finally, Ms. Doe's case is not at all like *Moore*, in that she has never acquiesced in, then opted out of, a state administrative regimen. I cannot emphasize enough that the majority has charted a new course with its decision today, one that infects with uncertainty any and all potential § 1983 actions in this circuit where any state actor in the decision-making chain arguably provides resort to even a cursory dispute resolution process.

### 2.

The majority ventures that *Patsy* has no application here, positing that compelling Doe to "seek permission from state entities prior to bringing suit in federal court does not amount to requiring exhaustion of state remedies for her constitutional claims." *Ante* at 8 n.5. With all respect to the majority, "seek[-ing] permission from state entities prior to bringing suit in federal court" precisely describes — to a "T" — the concept of exhaustion. According to the majority, Ms. Doe is required to submit to the authority of the school board before she can be considered to have suffered a "final" injury. *Id.* The majority relates that finality cannot exist until "'the initial decision-maker has arrived at a definitive position on the issue that

inflicts an actual, concrete injury.'" *Id.* (quoting *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985)).[3]

---

[3]As the majority discerns, the requirement of finality, front and center in *Williamson County*, is distinguishable from that of exhaustion, around which *Patsy* revolved. Exhaustion "'generally refers to administrative and judicial procedures by which an injured party may seek review of an administrative decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.'" *Ante* at 9 n.5 (quoting *Williamson Cnty.*, 473 U.S. at 193). Thus, in *Williamson County*, the Supreme Court concluded that a planning commission's refusal to approve a preliminary plat was not a final decision, in that the developer had not followed through with the commission to request variances from the applicable zoning regulations. *See* 473 U.S. at 193-94. The Court contrasted that situation with the review procedures provided by the state in the event that the variances were denied, holding that "those procedures clearly are remedial," and if invoked "would result in a judgment whether the Commission's actions violated any of respondent's rights." *Id.* at 193. As such, the respondent in *Williamson County* "would not be required to resort to those procedures before bringing its § 1983 action." *Id.*

The school board petition that the Commonwealth provides to persons deemed sexually violent offenders is a remedial measure, designed to afford relief from draconian applications of the entry bar. It is just the sort of recourse that *Williamson County* confirms need not be exhausted as a predicate to federal litigation. Perhaps more importantly, *Williamson County* involved a Fifth Amendment takings claim, which is a special type of civil rights action, one in which "no constitutional violation occurs until just compensation [by the state] has been denied." *Williamson County*, 473 U.S. at 194 n.13. Hence, "the nature of the constitutional right . . . requires that a property owner utilize [state] procedures for obtaining compensation before bringing a § 1983 action." *Id.*; *see Daniels v. Area Plan Comm'n of Allen Cnty.*, 306 F.3d 445, 453 (7th Cir. 2002) (recognizing that "the additional ripeness requirements of *Williamson County* create a takings claim exception to *Patsy*'s general requirement that exhaustion is not required in § 1983 suits"). No such exception exists with respect to claims alleging due process violations. *See Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal, Va.*, 135 F.3d 275, 283 n.3 (4th Cir. 1998) (noting absence of concern whether plaintiff's "Fourteenth Amendment due process and equal protection claims are ripe," because "[s]tate remedies need not be exhausted in order to pursue a § 1983 action claiming a violation of these federal rights" (citing *Patsy*)).

The majority's general statement of the law — correct as far as it goes — begs two questions. First, who was this "initial decisionmaker" that needed to arrive at a definitive position? And second, what was "the issue" that needed to have been definitively decided? In this case, the initial decisionmaker was the Virginia General Assembly, which passed a law that is alleged to have inflicted actual and concrete injury on Ms. Doe. The issue before the legislature, which it answered in the affirmative, was whether a person previously convicted of the Commonwealth's carnal knowledge offense who was more than five years older than his or her victim should be reclassified as a sexually violent offender. The General Assembly's decision was definitive, and it was final; no school board has the authority to overturn it.

Nonetheless, the majority appears to be operating under the misconception that the school board is properly the initial decisionmaker for purposes of our finality analysis. The majority's assumption might be plausible were Ms. Doe to concede that she had been accurately reclassified as a violent offender and simply wished to litigate her eligibility for dispensation from the entry bar. The school board would be uniquely qualified to decide that particular issue, because it would possess institutional expertise on such matters as, for example, Ms. Doe's reputation within the school community, the need for and adequacy of security on school grounds and at school events, and its past experiences in similar situations.

But Ms. Doe has not so conceded. She indeed advances a constitutional issue with respect to the procedure afforded by the school board, but that argument is made as an alternative in the event that we reject her primary contention that she was unconstitutionally reclassified. Put most simply, if Ms. Doe should not have been categorized as a sexually violent offender — which is exactly her claim — then the school board has no legally cognizable interest in her exclusion from school grounds, and no business in this case. At the end of the

day, the majority simply cannot justify its decision to flout Supreme Court precedent.

## II.

Having set forth the reasons why Ms. Doe's appeal should be resolved by a pedestrian application of exhaustion (and, possibly, abstention) principles, I move on to addressing why this matter has nothing to do with justiciability, and specifically the doctrines of standing and ripeness. The majority properly notes that "[r]ipeness analysis holds much in common with standing analysis," *ante* at 16 n.10 (citations omitted), but it is no Herculean feat to ascertain the salient distinction between the two:

> When determining standing, a court asks whether these persons are the proper *parties* to bring the suit, thus focusing on the qualitative sufficiency of the injury and whether the complainant has personally suffered the harm. . . . When determining ripeness, a court asks whether this is the correct *time* for the complainant to bring the action.

*Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173-74 (11th Cir. 2006) (citation and internal quotation marks omitted); *see Texas v. United States*, 497 F.3d 491 (5th Cir. 2007) ("[S]tanding is concerned with whether a proper party is bringing suit, while ripeness is concerned with whether the suit is being brought at the proper time." (citation omitted)).

## A.

The majority acknowledges that if Ms. Doe were to first avail herself of the remedial options provided under state law, the second and third standing elements (traceability and redressability), together with the "ripeness concerns we have noted here[,] would be addressed." *Ante* at 17. By conceding that her case could become ripe under certain circumstances,

i.e., that the correct time may arrive whereby Ms. Doe can bring this action, the majority effectively concedes that she is a proper party and thus has standing.

The majority may have intended, however, to hang its hat on the first element of standing, that is, "the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). If so, the majority is sorely in need of a different hook, because Ms. Doe has alleged that she is *now* prohibited from entering her stepson's school to attend parent-teacher conferences and extracurricular activities, which means that her ability to offer meaningful input and support with respect to John Doe's education is impaired, right now, at least to a degree. Moreover, Ms. Doe has contended that the defendants' actions will result in the undesired homeschooling of her younger children, who, three years following the filing of the Complaint, are now of school age.

We know that the freedom to direct and control the education of one's children is a constitutionally protected fundamental right, because the Supreme Court told us so — nearly a hundred years ago — in *Meyer v. Nebraska*, 262 U.S. 390 (1923). Ms. Doe's right in that regard, according to her Complaint, is currently being interfered with in a manner that she plausibly maintains violates the substantive due process protections of the Fourteenth Amendment. Moreover, a key component of the majority's suggested remedy for the violation — petitioning the school board to lift the entry bar — is itself alleged to be injurious to the degree that Ms. Doe must reveal her identity as a condition of approach. How could there ever be a more plain statement of an actual, concrete injury in fact?

The injury-in-fact case primarily relied on by the majority fails to support its sweeping assertions. In *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112 (4th Cir. 2000), we concluded

that the plaintiff waste disposal company possessed no standing to challenge a state statutory provision permitting a referendum on the creation of large dumpsites or the expansion of existing ones. Our decision was founded on the absence of any allegation that the plaintiff intended to build a qualifying site; we likewise deemed speculative the prospect that an expansion referendum would actually occur. The *Valero* plaintiff therefore lacked an injury in fact, which is certainly not the case here. Every act necessary to inflict injury upon Ms. Doe has already happened: (1) she was reclassified as a violent offender; (2) one or more of her children began to attend school; and (3) her ability to meaningfully interact with her children's school environment has been encumbered by the reclassification. Having her petition denied by the state circuit court or the county school board would not injure her further; such an outcome would merely represent a withholding of relief for her injury.

Nor is it difficult to trace the source of Ms. Doe's injury: the reclassification of her offense became effective on July 1, 2008, by virtue of the Commonwealth's amendment of its statutory scheme relating to sex offenders.[4] There is, therefore, a direct link between the challenged enactment and the injury complained of. That direct link is missing in each of the traceability cases cited by the majority, distinguishing those authorities. *See Allen v. Wright*, 468 U.S. 737, 757-59 (1984) (ruling that plaintiffs were without standing to sue Treasury Secretary and IRS Commissioner where complaint did not allege that general neglect to revoke tax-exempt status of racially discriminatory private schools had directly resulted in plaintiffs' children being discriminated against); *Simon v. E.*

---

[4]The legislators of the Commonwealth are, of course, immune from suit under § 1983, *see Whitener v. McWatters*, 112 F.3d 740, 742 (4th Cir. 1997), with the result that the official ultimately responsible for enforcing the relevant statutes — Colonel W. Stephen Flaherty, Superintendent of the Virginia Department of State Police — is the appropriate stand-in, and he is, in fact, a named defendant.

*Ky. Welfare Rights Org.*, 426 U.S. 26, 42-46 (1976) (directing dismissal of claims against Secretary and Commissioner where complaint alleged only that IRS Revenue Ruling encouraged hospitals generally to withhold indigent services, without asserting that plaintiffs had been denied treatment as a direct result); *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 229-30 (4th Cir. 2009) (concluding that plaintiff lacked standing to challenge federal approval of state environmental compliance plan where alleged injury traceable instead to separate state regulatory scheme); *Frank Kasner Enters., Ltd. v. Montgomery Cnty., Md.*, 401 F.3d 230, 235-36 (4th Cir. 2005) (ascertaining that injury described in complaint was too indirect to confer standing where gun show promoter and gun exhibitor alleged county code amendment influenced third-party venue owner to cease leasing them space).

The majority fares no better on redressability. In both *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138 (4th Cir. 2009), and *Covenant Media of South Carolina, LLC v. City of North Charleston*, 493 F.3d 421 (4th Cir. 2007), on which the majority premises its reasoning, the futility of the sought-after judgments was evident. In *Iota Xi*, the plaintiffs contested certain university sanctions imposed upon their fraternity, some alleged to have been in violation of the First Amendment. We concluded that those free speech claims were incapable of redress, inasmuch as "other adequate grounds existed" justifying the sanctions. 566 F.3d at 148. Similarly, in *Covenant Media*, we deemed untenable a challenge to certain provisions of a city regulation governing billboard permits, because the permit at issue had also been denied on alternative, unchallenged grounds. *See* 493 F.3d at 429-30.

Ms. Doe, by contrast, seeks a simple declaration from a federal court that the Virginia statute reclassifying her carnal knowledge offense as sexually violent is unconstitutional as applied to her, insofar as it is insufficiently tailored to her circumstances and thereby impinges upon her substantive, fun-

damental right under the Due Process Clause of the Fourteenth Amendment to educate her children in the manner she would prefer. On the merits of the issue, Ms. Doe either is or is not entitled to the relief she requests, depending on the facts of the case yet to be developed; there is no alternative ground whereby she may be denied her constitutional rights if she otherwise prevails. The opinion of the school board cannot alter Ms. Doe's entitlement. The opinion of the state circuit court — having not been solicited — has no bearing upon the question.

A judgment from the district court in Ms. Doe's favor would permit her the immediate liberty to enter her children's schools without credible threat of prosecution, while also affording her the means to petition the circuit court to have her name removed from the offender registry. *See Townes v. Jarvis*, 577 F.3d 543, 548-49 (4th Cir. 2009) (rejecting argument that plaintiff's habeas claim lacked redressability, in that federal judgment would provide immediate declaratory relief as an important precursor to subsequent state proceedings). Such an outcome would restore Ms. Doe to the position she enjoyed prior to the reclassification, and that is sufficient redress under the Constitution to confer standing. A return to normalcy is, from Ms. Doe's perspective, the prize at the bottom of the Cracker Jack box.

### B.

Given that Ms. Doe need petition neither the state circuit court nor the school board to begin with, her case at present is about as ripe as it is ever going to get. The majority's insistence that Ms. Doe submit to an irrelevant state administrative procedure will, if anything, risk the dispute becoming over-ripe. Even if the school board grants Ms. Doe permission to enter school property, she will still be legally designated a violent sexual offender, and she will yet be compelled to continue registering with the State Police for the rest of her life, with no hope of cessation.

But even under the majority's analysis of ripeness, as to which it employs the traditional framework established by our precedents, a voluntary petition before the school board is not a proper contingency that must be resolved as a condition to suit. The issue of ripeness was only indirectly before us in *Franks v. Ross*, 313 F.3d 184 (4th Cir. 2002), a landfill siting dispute, but it was nonetheless a key component in determining whether the plaintiffs' claims had been filed within the applicable limitations period. We ascertained that the time for filing suit had not ripened until the permitting agency had "conclude[d] the decisionmaking process on the project." *Id.* at 195-96; *accord Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 209 (4th Cir. 1992) (deeming plaintiff bank's claims against FDIC unripe where agency had not been appointed bank's conservator or receiver, and where agency was required to complete administrative process prior to taking final, definitive action of terminating bank's status as insured depository). Ms. Doe's dispute is not with an administrative agency — here, the school board. She is awaiting no final decision affecting her rights. To the contrary, her rights were affected with finality on July 1, 2008, when the amendments to the Commonwealth's sexual offender statutory scheme took effect, as passed by the Virginia General Assembly.

In determining ripeness, "we balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (citation and internal quotation marks omitted). The fitness prong is fulfilled "when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* at 319 (citing *Charter Fed. Sav. Bank*, 976 F.2d at 208). On the other side of the equation, "'[t]he hardship prong is measured by the immediacy of the threat and the burden imposed on the plaintiffs.'" *Id.* (alteration omitted) (quoting *Charter Fed. Sav. Bank*, 976 F.2d at 208-09).

This case presents the "purely legal" issue of whether the final action of the Commonwealth of Virginia, as applied to Ms. Doe's situation, contravenes her due process guaranty under the Constitution. The threat to the liberty interest asserted by Ms. Doe in participating in her children's education is immediate and ongoing, and, she alleges, oppressive. It is simply beyond cavil that Ms. Doe's substantive due process claim is ripe for adjudication. I would vacate the judgment below and remand for discovery on that claim.[5]

## III.

I must admit that I am nonplused — floored, even — that we would turn away someone in Ms. Doe's position, straining to forgo involvement for the nonce, while affording precious little hope for the future that her modest request for federal adjudication of a federal constitutional claim will be fulfilled. I fully appreciate that, twenty years ago now, Ms. Doe engaged in a serious offense, though, as the district court mused, she "seems to have maybe not committed the worst sex crime in the world." Transcript of May 12, 2011 Motions Hearing at 54 (J.A. 184). Nonetheless, Ms. Doe is a proper party — perhaps the archetypical party — to bring a suit of this nature. Moreover, the time for litigation is plainly now, and not after precious years have slipped away as Ms. Doe's children advance through the elementary and middle-school grades.

By refusing to insist that this case be decided in a federal forum, the majority stands one hundred eighty degrees from Supreme Court precedent, effectively abandoning our constitutional mandate. Our decision today will inevitably rain chaos down upon our previously settled jurisprudence governing standing and ripeness.[6] I do not think it an overlong

---

[5]Because Ms. Doe would obtain all the relief she seeks were she to prevail on her substantive due process claim, I take no position as to the majority's disposition of her remaining claims.

[6]One may well suppose that the majority's groundbreaking decision in this case will serve to block immediate federal court access for plaintiffs

stretch to predict that we will now stand alone among the circuits as the court that has abdicated its "province and duty . . . to say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177 (1803).

I emphatically and wholeheartedly dissent.

---

seeking to vindicate the full panoply of rights afforded under the Constitution and laws of the United States. Such claims might include, by way of example, the extent of the individual right to bear arms under the Second Amendment, *see Durga v. Bryan*, No. 3:10-cv-1989, 2011 WL 4594281 at *6 (D.N.J. Sept. 30, 2011) (unpublished) (observing in § 1983 action that defendants "present no arguments to support that the Firearms License application and subsequent appeal constitute a coercive proceeding that requires exhaustion"); the right of racial minorities to be free from discrimination in employment, *see Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 334 (4th Cir. 1983) (recognizing previously settled rule that, as to discrimination "claims brought under 42 U.S.C. § 1981, exhaustion of EEOC remedies is not a prerequisite to filing suit"); or the right of disabled children to a free, appropriate public education, *see Barron ex rel. D.B. v. S.D. Bd. of Regents*, 655 F.3d 787, 792 (8th Cir. 2011) (concluding that, in suit brought pursuant to § 1983 to enjoin closing of school for deaf children, "the parents were not required to exhaust because, if their position was well founded and the Board's actions violated the IDEA, adequate relief likely could not have been obtained through the administrative process").